NANCY E. JOY, Appellant,

*vs.*

THE GRINDSTONE-NECK WATER COMPANY.

·THE GRINDSTONE-NECK WATER COMPANY, Appellant,

*vs.*

NANCY E. JOY.

Hancock.          Opinion November 8, 1892.

*Eminent Domain. Water Company. Damages. Special Laws, 1891, c. 117.*

Upon appeal from the decree of County Commissioners, fixing the damages for land taken, it appeared that its charter authorized the water company "to locate, lay and maintain its sluices, aqueducts, pipes, hydrants, and other necessary structures in, over and through any lands, and to excavate in and through such lands for such locations; and required the company to file in the registry of deeds plans of such locations." Pursuant thereto the company duly filed its plan designating thereon a strip of land twenty feet wide across the appellant's land, as its "pipe-line;" *Held,* that an instruction that the "company having taken that strip has the right to locate, lay and maintain its sluices, aqueducts, pipes, hydrants and other necessary structures in, over and through the same," affords the company no ground of exception.

So long as the appropriation of the land is kept within the scope of the original sequestration, compensation is made once for all, and is to be estimated

according to the full measure of the right acquired under the charter and not merely according to the mode and time of the exercise of that right in the first instance.

ON MOTION AND EXCEPTIONS.

These two actions were tried together. They were appeals from an award of damages made by the county commissioners, for Hancock county, for a strip of land twenty feet wide and extending a distance of two hundred and forty-eight feet over the land of said Joy, taken by the Grindstone-Neck Water Company under its charter.

On the 18th day of April, 1891, the water company filed in the registry of deeds of Hancock county, a written statement of the property taken, together with plans of said property and its location.

The water company contended at the trial that it was limited, by its written statement so filed, to the use of the strip of land for its pipe line only ; and would not be entitled to build structures thereon, and that damages should only be assessed for the taking of the land for the purposes specified in said written statement.

The presiding justice instructed the jury as follows :

"They have taken that strip with the right, and have the right therein, to locate, lay, and maintain, their sluices, aqueducts, pipes, hydrants and other necessary structures, in, over, and through that land and with the right to excavate in, over and through such land for such locations, constructions, and maintenance. They have that right, and they have it permanently. It is not for ten years, nor for a hundred years ; it is permanent. So long as they see fit to perform their duties as a water company, so long as they have occasion and undertake to supply water to the people of Grindstone-Neck and Winter Harbor, and to maintain their works for that purpose, so long they can keep that twenty-foot strip of land. But when they give up their business, and cease to do their duty, then their right ceases ; it may be one hundred years, and it may be one thousand years. They have the right to use it so far as is necessary and reasonable for the purposes of their business. If it is

reasonably necessary for their business to build a stone aqueduct above the ground, they can do that; if it is reasonably necessary to sink their pipes still further into the soil they can do that; or to lay their pipes on the surface, they can do that; they can do all things that are reasonably necessary for the purposes of their business in supplying water. They cannot act whimsically; they cannot act wilfully; they cannot do anything there except what is reasonably necessary for the purposes of their legal business."

To this instruction the water company seasonably excepted. The verdict was for the said Nancy E. Joy to the amount of five hundred and sixty-two dollars and fifty cents. The water company also filed a general motion for a new trial.

*Deasy and Higgins*, for Joy.

*Wiswell and King*, for water company.

VIRGIN, J. For the purpose of supplying certain specified places with pure water, "Grindstone-Neck Water Company," by § 6 of its charter (Priv. L. 1891, c. 117), was empowered to do certain things, the doing of which required certain other things to be done by it. It was empowered:

1. To "take and hold any lands necessary for flowage, dams, reservoirs, locks, gates, hydrants and other necessary structures."

2. To "locate, lay and maintain its sluices, aqueducts, pipes, hydrants and other necessary structures in, over and through any lands."

3. To "excavate in and through such lands for such locations, construction and maintenance."

If the company, on making its surveys, was desirous of exercising the power conferred, it was required by the same section:

1. To "file in the registry of deeds . . plans of such locations and lands showing the property taken," and

2. To "publish notice of such filing three weeks successively."

Pursuant thereto, the company, on April 16, 1891, executed, and on May 18, and 23 following, duly filed a detailed plan —

with an explanatory note thereon " of its locations and lands, showing the property taken." Its eastern terminus represents one half acre of land, the external lines of which are marked with their respective courses and distances, situated "at the outlet of Birch Harbor Pond." Thence protracting westerly is what purports to be a delineation of a continuous strip of land, uniformly twenty feet in width, extending in part along a highway and in part across private lands, to the western terminus. The side bounds are represented by red parallel lines, midway between which is a continuous black line, "indicating," — in the language of the explanatory note, — "the pipe-line." And wherever these lines extend across private lands, their respective courses and the length of each one's land taken are noted, including the appellant's, thus : "S. 71 degrees, 45 minutes W. 214 ft."

Prefixed to the plan proper, is a statement or certificate, purporting to have been executed in the name of the company "by its president thereunto duly authorized." After certifying that, the company thereby "files the annexed plan . . showing the property and lands taken for the purposes of the corporation," the certificate continues : "The lands so taken consist of one half acre of land . . at the outlet . . taken for the purpose of erecting thereon dams, locks, gates, and gate houses and other necessary structures, a strip of land, twenty feet wide, taken for the location of its pipe-line, extending from the said half acre . . through the lands of . . Nancy Joy. The exact location of said pipe-line . . and the courses of said pipe-line, and the length thereof upon the lands of each of the several owners are accurately shown upon the plan."

In respect to the "twenty-foot strip," on which the "exact location of the pipe-line is accurately shown on the plan," the presiding justice, after calling the jury's attention to the correlative rights of the owner of the easement and of the fee, instructed the jury as follows :

"The company has taken that strip and has the right therein to locate, lay and maintain their sluices, aqueducts, pipes,

hydrants and other necessary structures in, over and through that land."

The company contends that this language is too broad — that, in substance, while it was empowered "to take any lands necessary" for the general purpose of constructing thereon their entire system of water works which might call into requisition, not only dams and any and all other things specified, but also certain others not specified but included under the general description — "other necessary structures;" and that while it had the authority also, in carrying out its general scheme, "to locate, lay and maintain sluices" and any other mode of conducting water specified, as well as others of like nature and for like purpose embraced within the same general terms — "other necessary structures;" still as each and all of them were not necessary to the full accomplishment of its purpose, the company had the right to elect which of all the various kinds of conduit should be adopted. And when it once made its election of a "pipe" instead of a "sluice" or "other necessary structures," reduced its election to an accurate "plan of its locations of lands, showing the property taken" duly executed and placed on file in the public registry — then all concerned were bound by it. Thereby it became permanent record evidence. The company and owners could resort to it ever after; the former to ascertain the extent of its easement in the lands condemned, the latter to learn how far their rights were restricted by the easement, fell short of a complete dominion over the respective lands in which they still retained the fee.

But however plausible this view may at first seem we think it is too narrow; and no authority has been cited and we have seen none to support it. The extracts in the brief of the company's counsel, taken from various reports contain nothing in point. Thus *Hazen* v. *B. & M. R. R.* 2 Gray, 580, simply holds that the filed location constitutes permanent record evidence of land set off by metes and bounds which is subject to the easement whether covered by railroad structures or not. Neither is there any question in respect of the elementary rule

concerning the respective rights of parties, in land subject to an easement, enunciated in *Propr's, &c.,* v. *Nash. & Low. R. R. Co.* 104 Mass. 1, 10. In *O'Neal* v. *Shannon,* 77 Tex. 182, the court in enjoining the city from appropriating, for a system of water works, land granted to it "for street purposes only," adopted a general abstract remark from a case cited which while deciding that appropriating the land of a highway to railway uses, imposes such new servitude thereon as entitles the owner of the fee to fresh compensation—said, "When land is condemned for a special purpose on the score of public utility, the sequestration of the land is limited to that particular use." *Imlay* v. *Union Br. R. R. Co.* 26 Conn. 249.

We have not seen the case said to be reported in 10 N. Y. Supp. cited from Am. Dig. 1890, p. 1223, but so far as we can gather from the abstract, we do not think it reaches the point in issue.

In New Jersey, in deciding that a market-place cannot be established in a public street without compensation to the proprietors of the contiguous lands who own to the center, the court said : "The true rule is, that land taken by the public for a particular use cannot be applied, under such a sequestration, to any other"—*i. e.*, materially different and incongruous—"use, to the detriment of the land owner." *State* v. *Laverack,* 34 N. J. L. 201, 205.

So in *Imlay* v. *Union Br. R. R. Co. supra,* the court said, if land once taken and still held for highway purposes, may be used for a railway without exceeding the limits already acquired by the public, "then the new use is within the scope of the original sequestration"—which it denied. But in *Elliott* v. *Fair H. &c., R. R.* 32 Conn. 579, the same court decided, as did our own court in *Briggs* v. *L. & A. H. R. R. Co.* 79 Maine, 363, and the numerous cases cited on the defendant's brief, that to lay and use a horse railroad track in a public street is not a new servitude and incongruous use imposed upon the contiguous lands.

Neither does the occupation of a highway by an incorporated

turnpike company's road. *Douglass* v. *Boonsborough T. R. Co.* 22 Md. 219.

Thus it would seem, that a change of the particular mode of use, for instance from a pipe to a sluice, is not a change of the use itself, any more than is a change of the motor on a street railway. *Briggs* v. *L. & A. H. R. R. supra.* But when the original use itself is changed and the new does not come within the scope of the original sequestration, or is so inconsistent with or foreign to the old as to impose a materially different servitude upon the owner's soil, then he is entitled to fresh damages, and a new condemnation is essential.

The language of the charter requires "plans of locations and lands showing the property taken." "Plan of locations and lands" is essential to show whether more land was taken than was necessary for the works. For only property reasonably necessary for the full accomplishment of the general purposes of the company and the design of the legislative grant can be taken. *N. Y. & H. R. R. Co.* v. *Kip,* 46 N. Y. 546. And while the company is to some extent judge of what is required, its judgment is reviewable. *N. Y. C. & H. R. R. Co.* v. *Metrop. L. L. Co.* 63 N. Y. 327. "Showing the property taken," refers to the external limits, so that no present or future misunderstanding may arise among the present parties or their assigns, as to the precise lands of which the company has its incorporeal right of use, and the owners of the soil a beneficial right though subordinate to and not inconsistent with the easement.

The company condemned the "twenty-foot strip," "in, over and through" which to construct some reasonable, necessary conductor for the passage of water from the pond along a main line from which it could be distributed among its "water takers," and in the plan of its works denominated it by the generic name of "pipe-line," *i. e.*, main conduit line. The charter does not confine the appropriation to a "hollow tube," neither does the plan, by giving the land a name. If, to meet the existing wants, such an appropriation be deemed sufficient and made, that will not prevent the addition or substitution of any other conductor, tubular or otherwise, reasonably necessary to respond

to increased and increasing future public demands, so long as such change be kept within the external limits of the land and the scope of the original sequestration; for then no new and different servitude will be imposed upon the land.

Neither did the company understand it to be thus limited, or it would not have taken a strip of land of that width for a mere pipe of the dimensions suitable and sufficient to supply the wants of that locality at the present time. Even if, as held in *Ham* v. *Salem*, 100 Mass. 352, the company, in the absence of any reservation of rights to the owners of the soil, only lay a pipe and may place it above, on or below the surface, vary its depth from time to time, leave the ditch open or close it and make the surface smooth, as shall best suit its convenience— then twenty feet can hardly be needed. The company obviously had an eye to the future — perhaps not distant — when it might become necessary to add or substitute "other structures" of different form and larger capacity, in order to satisfy the calls of the public.

And while the company might not, perhaps, be justified in appropriating the "twenty-foot strip" to the erection of any structures not reasonably suitable as a conductor, it may, at any time, as future public needs require, change the particular kind of conduit adopted in the first instance to any other reasonable and necessary one, so long as it does not encroach upon the owner's rights.

The rule governing the assessment of damages is based upon a like consideration. For compensation is made once for all, and is to be estimated according to the full measure of the right acquired by the company, and not merely according to the mode and time of the exercise of that right in the first instance. *Hamor* v. *Bar Harb. Wat. Co.* 78 Maine, 127, 135, and cases there cited; *Edmands* v. *Boston*, 108 Mass. 535, 547, and cases.

So what the judge said to the jury about the right of the company "to build a stone aqueduct above the ground," was unexceptionable, modified as it was by the next preceding clause in the same sentence —"if it is reasonably necessary for their busi-

ness"—that is, the business defined in § 1 of the charter, viz., "supplying Grindstone-Neck, the village of Winter Harbor and the Schoodic Peninsular with pure water for domestic, sanitary, private and public uses, including the extinguishment of fires." Exceptions therefore, must be overruled.

*Motion.* Was the verdict for $562.50 excessive? A thorough examination of the reported testimony satisfies us that it was most manifestly so. The lot is situated midway between the village of Winter Harbor and Grindstone-Neck with its score of cottages, tenantless except in the summer, and belonging to non-residents. The whole lot consists of two and one half acres, of which one eighth of one acre only was taken. To be sure, the average estimated value of the whole lot, as fixed by the nine witnesses called by the appellant, was $2500, or $1000 per acre; and the average damage by the taking, at $1259. But this estimate of value was of the most speculative, not to say visionary character, based upon the very remote probability that, the territory, of which this is a part, may become a noted watering place, similar to Bar Harbor—ten miles distant. But one swallow does not make a summer, neither does one cottage make a very extensive summer resort. Without unprofitably entering into the details which have led us to the conclusion, it is sufficient to announce the opinion that, the sum fixed by the county commissioners who viewed the premises and who have not infrequent occasion to pass judgment on like questions, was ample. Hence, if the appellant (Joy), within thirty days after the announcement of this opinion, remit all of the verdict in excess of $300, then the motion is to be overruled—otherwise, sustained and a new trial granted.

*Exceptions overruled. Motion sustained.*

PETERS, C. J., WALTON, LIBBEY, FOSTER and HASKELL, JJ., concurred.