### STATE OF MAINE

#### *vs.*

### FREDERICK C. YATES, F. C. GOODWIN, C. E. GOODWIN AND W. M. DAVIS.

### York.   Opinion September 12, 1908.

*Way.    Terminus at High Water Mark When Laid Out.    High Water Mark Extended Seaward by Accretions.    Terminus Follows Changed High Water Mark.    Public Easement.    Land Made by Accretion.    Fee of Same.    Constitution of Maine, Article 1, section 21.*

The terminus of a street laid out at Old Orchard in 1871 was "high water mark." Since 1871 high water mark at this point in Old Orchard has been moved by accretions about eighty-eight feet seaward.

*Held:* (1) That when high water mark changed, and the land above high water mark gradually extended seaward by accretion, the public easement which was attached to it originally at high water mark, went with it, and the street had ended at all times at high water mark, whereever it has been.

(2) That although the fee of the land made by accretion belongs to the defendants, they are not deprived of their property in it, and of a just compensation, by this extension of the street. The original compensation awarded is presumed to have been full and just. It covered all damages to the defendants' estate, and for all time, including such damages as might be occasioned later than the taking, by an extension of the easement by operation of law.

On report.   Judgment for the State.

Indictment for creating a nuisance, by obstructing a way, at Old Orchard, York County.   The indictment contains two counts. The first count charges that the defendants "on the first day of October in the year of our Lord one thousand nine hundred seven at Old Orchard in said County of York, did unlawfully and injuriously erect, maintain and continue a nuisance, to wit, a certain platform attached to the Old Orchard pier which obstructed a certain public highway known as Old Orchard Street in said Old Orchard."   The second count charges that the defendants "on the first day of October, A. D. 1907, did unlawfully and injuriously erect and build and cause to be erected and built in ' and upon the lower easterly side of said Old Orchard Street a certain wooden structure, to wit, a platform, thereby obstructing said highway and endangering travel thereon, and thereby erecting, maintaining and continuing a nuisance against the peace of said State, and contrary to the form of the statute in such case made and provided."   The defendants pleaded not guilty.   An agreed statement of facts was then filed and by agreement the case was reported to the Law Court for decision.

The material facts are stated in the opinion.

*Frederick A. Hobbs,* County Attorney, for the State.

*George F. & Leroy Haley,* for defendants.

SITTING:   EMERY, C. J., WHITEHOUSE, SAVAGE, PEABODY, SPEAR, BIRD, JJ.

SAVAGE, J.   The defendants stand indicted for creating a nuisance by obstructing a way.   The case comes up on report.   It appears that in 1871, a way, known as Old Orchard Street, was laid out in Old Orchard, beginning "at the north corner of Ebenezer C. Staples' field, thence running south 41 degrees 15 minutes east 76 rods or to high water mark."   The street was built and has since been constantly used by the public.   At the time the street was laid out it was exactly seventy-six rods from the point of beginning to high water mark on Old Orchard beach.   This street was connected

with the sea, which is a great natural highway. But since 1871, high water mark at this point in Old Orchard has been moved by accretions about eighty-eight feet seaward. The defendants own a lot of land on the shore bounded westerly by Old Orchard Street. They claim to own the fee to the center of the street, and we assume that they do own it. The obstruction complained of is on the eighty-eight foot strip of land made by accretion since 1871, and is in front of that half of the way as originally laid out, of which the defendants claim the fee.

It is settled law that the owner of land, bordering on a stream, a lake or the sea, which is added to by accretion, that is, by the gradual and imperceptible accumulation or deposit of land by natural causes, becomes thereby the owner also of the new made land. It follows that the defendants, owning to the center of the street as originally described, have gained title by accretion to so much of the added land as lies in front of their half of the street, and that the obstruction is on land of which they own the fee. *Banks* v. *Ogden*, 2 Wall. 57. So far there is no controversy.

But the State contends that as far and as fast as the ground in front of high water mark as it was in 1871 has been added to by accretion, so far and so fast has the public easement extended seaward by operation of law, that the definite terminus of the street in 1871 was "high water mark," and that it continued to be and is now at "high water mark," wherever that may be. In short, it is contended that the end of the street has kept pace with the receding high water mark, and hence that the locus of the obstruction is within the street. We think that this contention must be sustained.

The cases involving this precise question are very few, if there are any, but the trend of judicial thought appears in many decided cases, some of which we cite. In *People* v. *Lambier*, 5 Denio, 9, the court said that, in case of accretions from natural causes, while the alluvial additions would become the property of the owner of the land against which the deposit is made, "it would hardly admit of a question that in such a case a public street leading to navigable waters would keep even pace with the extension of the land so as to preserve an unbroken union between the easement on

land and that on such navigable waters." This expression was doubtless a dictum when used, but it was restated and approved by the same court in *Mark* v. *Village of West Troy*, 151 N. Y. 453. In the last named case, the court stated specifically that the rule held good "whether the change in the land be due to natural causes, or to the voluntary act of the owner of the land." In *Newark Lime and Cement Mfg. Co.* v. *Mayor and City Council of Newark*, 15 N. J. Eq. 64, where a highway had been laid out to a river, as determined at the trial by a survey, the court said: "The survey carries the highway to the river, and wherever the river is found, there the highway extends. If the shore is extended into the water by alluvial deposits, or is filled in by the proprietor of the soil, the public easement is, by operation of law, extended from its former terminus over the new made land to the water." In *Hoboken Land and Improvement Co.* v. *Mayor, Etc., of Hoboken*, 36 N. J. Law, 540, the same doctrine was restated with approval. In *Dana* v. *Craddock*, 66 N. H. 593, it was held that a highway laid out to "a spike on the margin of the lake" goes to the lake in all stages of the water. The court said, "The road extends to the changeable margin of the water, whether that line is moved by natural causes by the construction of a wharf." See also *Re. Riverside Park Extension*, 58 N. Y. Supp. 963; 1 Farnham on Waters, 326.

There are in the books many cases of ways by dedication bordering on water ways. While ways by dedication are not strictly analogous to ways by statutory location, since the construction to be given to dedication depends upon the intent of the person dedicating, as a question of fact, and the construction of a statutory laying out is a question of law, still the cases touching dedicated ways are useful as illustrations of the reasons which underlie the legal rule in statutory cases. It is said that when a highway to a water way is acquired by dedication, the presumption is that the intent was that the way should reach the water so as to enable the public to enjoy the navigation of the stream. The result is that if the adjoining land is gradually extended into the stream, the highway will follow the extension and continue to reach the water.

And it will extend over natural accretions ipso facto.  1 Farnham on Waters, 673 ; *Saulot* v. *Shepherd*, 4 Wall. 502 ; *Cook* v. *Burlington*, 30 Iowa, 94 ; 6 Am. Rep. 649 ; *Freedom* v. *Norris*, 128 Ind. 377 ; *Lockwood* v. *N. Y. & N. H. R. R. Co.*, 37 Conn. 387 ; *Mayor of Jersey City* v. *Morris Canal & Banking Co.*, 12 N. J. Eq. 547 ; *Godfrey* v. *Alton*, 12 Ill. 29.

The principles declared in the cases we have cited seem to be consonant with reason.  Here is the case of a street laid out to connect with the sea, a continuous way on land and water.  The apparent purpose of extending the street to high water mark was to make such a continuous way, and yet unless it be true that the terminus of the street followed "high water mark" as it might be removed seaward by accretion, we have this curious result.  In order to afford the public continuous access to the water way, it would have been necessary for the authorities to lay out new additions to the street at least as often as the imperceptible accretion by accumulation became perceptible.  Such a conclusion is not reasonable.

On the other hand, in the light of judicial reason and expression, we hold that when high water mark changed and the defendants' land above high water mark was gradually extended seaward by accretion, the public easement which was attached to it originally at high water mark went with it, pari passu.  The street ended at all times at "high water mark," which was declared in the laying out to be the terminus.

The defendants contend, however, that this conclusion is in violation of Article I, section 21, of the constitution, which declares that "private property shall not be taken for public uses without just compensation."  They say they have received no compensation, and that none has been awarded to them, on account of the way which we have said extends over their new made land by virtue of the laying out in 1871.  We think this ground is not tenable.  When the street was originally laid out, if any damage was sustained, compensation was awarded to and received by the defendants or their predecessors in title, or was waived.  The law conclusively presumes that the compensation was full and just.  It covered all damages to

the defendants' estate and for all time.  It was made once for all.
It covered the damages which were incident to the taking to the
limit of the easement as first used.  It also covered such damages
as might be occasioned later by an extension of the easement by
operation of law.  These are all presumed to have been estimated
in the first place.  *Joy* v. *Grindstone Neck Water Co.*, 85 Maine,
109; *Taylor* v. *P. K. & Y. St. Ry.*, 91 Maine, 193.  In fact,
when the defendants gained their soil by accretion, they gained it
subject to the public easement.  They have never owned it free
from the easement.  So that in no event are they entitled to claim
damages for the extension of the street over their newly made land
by operation of law.

   It follows that the entry must be,

                                        *Judgment for the State.*