The three consolidated actions involved herein were appeals from the assessment of damages made in favor of the plaintiff, First National Stores, Inc., by the defendant, the town planning and zoning commission of the town of West Hartford. The appeals were taken pursuant to the provisions of chapter 13, §§ 7 and 8, of the charter of the town of West Hartford in connection with the proposed layout of Arapahoe Road Extension, a public highway, across land of plaintiff.
Pursuant to a duly convened public hearing held by the commission on November 13, 1961, damages were assessed in favor of First National Stores, Inc., in the amount of $34,485, in connection with the layout of the public highway in issue. This assessment was thereafter confirmed by the town council of West Hartford on November 28, 1961. Thereafter, on December 12, 1961, the plaintiff filed its appeals to this court from the assessment made, pursuant to § 8 of the charter of the defendant, and seeks a reassessment of the damages assessed as above set out.
The appeals in this court were referred to Hon. Raymond E. Baldwin, state referee, in accordance with the provisions of § 8 of said charter, to hear the evidence and report the facts to this court on the issue of a reassessment of the damages awarded and for the further purpose of reviewing, modifying, affirming or revoking the action of the commission. *Page 304 
Thereafter, extensive hearings were held before said state referee. In November, 1964, the referee filed his report, setting forth his findings of facts and conclusions. In said report he found that the damages in favor of the plaintiff should be reassessed to $218,379 instead of the $34,485 awarded by the defendant commission. In March, 1965, the defendant moved to correct said report, and the said referee filed a corrected report in April, 1965, in which, after making minor corrections, he reaffirmed the said reassessment of damages in the sum of $218,379. Thereafter, in May, 1965, the defendant filed exceptions to the referee's report as corrected and objections to the referee's report as corrected. The issue has now become crystallized in this court by the motion made by the plaintiff on October 26, 1965, for acceptance of the referee's report as corrected and for denial of the defendant's exceptions and objections, and praying for judgment in accordance with § 363 of the Practice Book.
The referee had before him a strongly contested issue of fact as to the basis upon which this assessment should be made. The position of the defendant commission was that the damages should be assessed solely upon the market value of the land actually taken, whereas the plaintiff argued that the referee was required to take into account the claim of very substantial damage sustained in terms of reduction in value of the remaining property.
By way of background as to the facts in issue, the state referee found and set out in his report the following: "[1] On November 13, 1961, the plaintiff owned a parcel of land with the buildings thereon located on the west side of South Main Street in West Hartford. [2] This land is bounded northerly, approximately 426 feet, on lands owned by others, and on a municipal parking area; easterly, *Page 305 
approximately 400 feet, by South Main Street; southerly, approximately 300 feet, by land of others, and westerly, approximately 405 feet, by land of others. . . . [3] The main building on the land is used as a large chain store. This building was enlarged in 1962 by the addition of 5000 square feet of floor space to the south side of the store building and, in a separate and smaller addition, 2400 feet which presently houses a branch bank. . . . The construction of this addition began in January, 1962, and was completed in August, 1962. The plans for the addition were started immediately after the acquisition of additional land by the plaintiff in June, 1959. [4] The building structures are located on the more southerly portion of the land. There is a large area for parking customers' automobiles north of the building, with smaller areas for parking on the premises east, south and west of the building. This parking space will accommodate 254 parked cars. . . . [5] There is an entrance and exit to the premises to and from South Main Street. This entrance is located just north of the north wall of the store building. . . . [6] There is also an entrance and exit south of the building. This entrance extends along the southerly portion of the plaintiff's land, and furnishes a continuous passway which extends to the right-of-way, thus enabling cars to go from South Main Street over the plaintiff's land and right-of-way to LaSalle Road.. . . [7] The customers' entrance to and exit from the store is on the northeast corner of the store building. . . . [8] A parcel pick-up operated with a traveling belt system has been installed along the east side of the store. This is so arranged that a customer can make her purchases, receive an identification ticket for her parcels at the check-out point, leave the store, secure her automobile from the parking areas, and drive it to the parcel pick-up *Page 306 
where her parcels will be placed in her car by one of the plaintiff's employees stationed there for that purpose. The average sales slip for a single customer is $6.20."
The state referee further found that the plaintiff's store is located in a congested downtown shopping area of West Hartford, and that "the commission had conceived the plan of creating a `belt line' which would, through existing streets, and the opening up of the Arapahoe Road Extension, permit a circular flow of vehicular traffic in the downtown area of West Hartford." In connection with this proposed "belt line," the commission proposed opening up a 50-foot right-of-way, to be known as "Arapahoe Road Extension," to be used as a public highway extending westerly from South Main Street to LaSalle Road across the southerly portion of the plaintiff's land and along the right-of-way which it now has to LaSalle Road. The referee in his report further found that this proposed highway "would take a portion of the plaintiff's land, along its southerly border, approximately 290 feet long, 50 feet wide at its easterly end on South Main Street and 35 feet wide at its westerly end, and the entire right-of-way which the plaintiff now has from the southwesterly corner of its property to LaSalle Road." The report further found that the proposed "Arapahoe Road Extension" would eliminate the exit by which, as the situation now exists, traffic leaving the plaintiff's pickup lane enters South Main Street just north of the junction of the present passway and South Main Street.
Based on these essential findings of fact, the referee reached the following controlling conclusions, which are the subject of the defendant's main attack upon the report made by the referee: (1) The parcel pickup system is an essential and necessary *Page 307 
feature of the merchandising program adopted in the plaintiff's store. (2) Under the revised traffic pattern required if said Arapahoe Road Extension is to become operative as part of this "belt system," a "hazardous traffic congestion, difficult, if not impossible, to regulate successfully and safely," would result. (3) If a parcel pickup lane is to be provided by the plaintiff for its customers it will be necessary to relocate this lane and place it on the north side of the plaintiff's store building. (4) Such a relocation will necessitate a complete interior rearrangement of the plaintiff's store in order to conform to the plaintiff's long-established and effective practice of arranging merchandise for customers' self-service and for display purposes in the store in this highly competitive business and for receiving merchandise from suppliers off the premises. (5) These relocations and rearrangements are extensive and affect the entire building. They will require the expenditure by the plaintiff of $176,379, which is a reasonable sum. (6) The taking of land necessary for the Arapahoe Road Extension will eliminate twenty-one of the parking spaces now available for customers' parking south of the building. (7) The highest and best use of the plaintiff's property is for a chain store and shopping center:
 "The fair market value of the property before the proposed taking was $456,000 (Land, 152,000 square feet at $3)
 Buildings Store (21,297 square feet at $18 less 10 percent for depreciation and obsolescence) 345,012
 Bank Addition X --------- $801,012" *Page 308 
 (8) "The fair market value of the property after taking is $414,000 (Land, 138,000 square feet at $3)
 Store Building $345,012 Less the cost of rearranging the store as nearly as can be to its present operating efficiency 176,379 168,633 ------- Bank Addition X --------- $582,633"
(9) As a result of the foregoing, "the loss sustained by the plaintiff if the Arapahoe Road Extension as it affects the plaintiff's property is completed is $218,379." (10) The damages should be assessed in the amount of $218,379.
At the hearings, the plaintiff presented extensive testimony through various expert witnesses, including Hans S. Jensen, a civil engineer and surveyor; Earl H. Flynn, a traffic engineer; John J. Harrington, the grocery sales manager for the Hartford division of the First National Stores, who has a civil engineering degree and has been connected with large supermarkets since 1938, working on plans and developments for supermarkets; John Olear, the construction supervisor for the Hartford division of the plaintiff, who also has a civil engineering degree; and John T. Dunn, a real estate appraisal expert. All of these gave voluminous testimony in support of the claims made by the plaintiff.
In its behalf, the defendant produced as witnesses Curtis M. Middlebrook, Jr., a real estate expert who made the appraisal upon which the defendant commission based its assessment of damages of $34,485 relative to the proposed Arapahoe Road Extension in the September 13, 1961, hearing, and *Page 309 
Werner Von Gundell, the town planner for the town of West Hartford since December, 1961.
It must be pointed out that the parties hereto had stipulated and agreed that "the final accepted report of the Hon. Raymond E. Baldwin, State Referee, as to the issue of damages in docket No. 84318 will be binding upon the parties in the other docketed cases as though all docketed cases had been joined in issue" after a full hearing thereon. The record discloses that at the inception of the hearing before the referee there was considerable discussion between the parties as to its scope. It is apparent from the record that the referee agreed with the claim of the plaintiffs, contested by the defendant, that the proceedings before him constituted a hearing de novo to reassess the damages and review, revoke, modify or affirm the act of the town plan and zoning commission in making the assessment in issue.
The chronological record shows the following: (1) Notice of a public hearing to be held on November 13, 1961, concerning "Arapahoe Road Extension — Assessments of damages and benefits for acquisition of 50-foot right-of-way and improvement of street for Arapahoe Road Extension from LaSalle Road to South Main Street," was published in the Hartford Times on November 1, 1961. (2) On November 13, 1961, the town plan and zoning commission held a public hearing followed by an executive committee meeting at which it adopted the assessment of damages in issue. (3) By a letter dated November 16, 1961, the town plan and zoning commission gave notice to the town council of the action taken at the public hearing on November 13, setting forth that the "Town Plan and Zoning Commission unanimously voted to approve the assessments for damages sustained by and benefits accruing *Page 310 
to" First National Stores, Inc., "value of taking $34,485.00." (4) The minutes of the meeting of the West Hartford town council on November 28, 1961, state that the assessment of damages and benefits with reference to the proposed Arapahoe Road Extension was accepted and ordered placed on file. (5) On January 5, 1962, a notice to property owners regarding assessment of damages — Arapahoe Road Extension — was sent out to the plaintiff, setting forth the "value of taking $34,485.00 (damages)." (6) The evidence adduced at the hearing shows that on April 3, 1962, a map concerning the Arapahoe Road Extension was filed with the town clerk. A copy of this was sent to and received by the plaintiff.
This date sequence is important because the plaintiffs commenced, in January of 1962, the building of an addition to their existing store which was completed in August of 1962. The award of damages by the referee takes into account the effect of the taking on the enlarged store. As the referee's report sets forth, the plans for this store addition "were started immediately after the acquisition of additional land by the plaintiff in June 1959." The record of the hearing before the referee warrants the conclusion that the plaintiff acted in good faith in proceeding with the building of this addition despite the fact that it had prior notice of the plan of the defendant town to construct the Arapahoe Road Extension.
One of the pivotal questions involved is when a legal taking took place. The provisions of the charter of the town of West Hartford are not clear on this question. Section 7 of chapter 13, bearing the caption "Planning," provides that "such commission shall, upon the filing of such survey, map or plan, give notice to each record owner of *Page 311 
land included in such survey, map or plan, by mail and by advertisement in a newspaper of general circulation in the town, of the place where, and the time, not less than ten days after such mailing and publication, when the commission shall hear any person claiming to be affected thereby." Section 7 further provides that "any assessments of benefits so made shall, from the time of the completion of such work, constitute a lien against the property affected." Then it goes on to state that "such liens may be continued by filing with the town clerk for record in the land records of the town, within ninety days after such assessment shall have been made and notice thereof given to the person or persons affected thereby, a certificate of such lien signed by the secretary of such commission." But it is important to note that, under § 7, the commission has a right to change any survey, map or plan made by it and upon giving notice by mail of such changes to the record owner of land affected and "by advertisement as in the first instance" it may take subsequent proceedings as provided in the case of an original filing. This, in effect, means that the town could at any time change such a plan simply by giving notice and starting the assessment procedure all over again.
These provisions of § 7 do not provide a sufficient basis for a conclusion that there was in fact a legal taking as of the date the assessment in issue was made. The referee in effect so found. It must be kept in mind that the taking of property by municipal authorities for municipal purposes is a taking by virtue of the right of eminent domain. Bissell
v. Bethel, 113 Conn. 323, 325. Here there is nothing in the record, nor does the defendant make the claim, that the amount of the commission's assessment, $34,485, was at any time actually deposited or tendered the plaintiff. There was no exclusion of the *Page 312 
plaintiff owner "from . . . [its] private use and possession and the actual assumption of exclusive possession for public purposes by the condemnor. . . . The taking refers to the legal taking and presupposes payment following the date when the damages become due and payable. . . . When possession has been taken from the owner, . . . [it] is constitutionally entitled to any damages which . . . [it] may have suffered. . . ." Trumbull v. Ehrsam,148 Conn. 47, 55, 56.
It is in the light of these findings of fact by the referee and the conclusions drawn therefrom that the court must accept or reject the report. The main argument of the defendant is that the referee did not correctly use the "before and after" theory in ascertaining the fair market value. The referee's report did adopt a "before and after" approach.
It must be emphasized that the fact situation presented herein is quite unique and was based upon the claims of the plaintiff that the taking of the land in issue would force the drastic rearrangement of its store setup, testified to by its expert witnesses, requiring the reinstallation of the parcel pickup traveling belt system along the north side of the store.
In determining market value before and after, the referee was entitled to take into consideration aspects of the taking by which the value is legitimately affected. Harvey Textile Co. v. Hill,135 Conn. 686, 688. As is brought out in Bissell v.Bethel, supra, 327, "[t]he ultimate fact to be determined is the net amount of compensation to the landowner for the loss caused to him by the taking of his property and the carrying out of the public improvement." The case of Colaluca v. Ives,150 Conn. 521, 530, points out that "the question of what is just compensation is an equitable one rather *Page 313 
than a strictly legal or technical one. The paramount law intends that the condemnee shall be put in as good condition pecuniarily by just compensation as he would have been in had the property not been taken."
Reference is made to several cases decided in the federal courts which appear to be more nearly comparable to the unusual fact situation involved herein. Because of the forced rearrangement of its store interior and removal of its parcel pickup system, the customary "before and after" market value approach cannot be rationally and equitably applied in this case. See United States v. Certain Property,344 F.2d 142 (1965). But even under the "before and after" market value approach, "`severance damages,' that is, payment for the lessening in value of part of property not taken as a result of a partial taking," may be given. United States v.Certain Land in Borough of Brooklyn, 346 F.2d 690,694 (1965). This case is pertinent to the issue here in that it points out (p. 695) that the cost of providing a necessary substitute facility must be taken into account as part of severance damages. As another recent federal decision, United States
v. Fort Smith River Development Corporation,349 F.2d 522, 526 (1965), points out, "[t]hat the owner of property condemned for public use is to be put in as good position pecuniarily as he would have occupied if his property had not been taken, is axiomatic in the law of condemnation." And UnitedStates v. Certain Property, supra, 146, brings out that the essential question of damages to be decided is what losses the plaintiff owner sustains, not what the taker gains. This case also makes clear that the forced rearrangement of plaintiff's store must be considered in the same category as if the taking destroyed or depreciated the value of the fixtures and equipment, in which case adequate compensation *Page 314 
to the extent of the destruction or depreciation must be given. These cases point out that in the final analysis it is not the nomenclature used but the resultant effect of the award in giving just and adequate compensation that is decisive.
In reaching a decision, this court must take into account the extensive expert testimony presented in the hearing before the referee. He had the opportunity to hear the evidence of experts and he was entitled to reach his conclusions "by weighing those opinions in the light of all the circumstances in evidence bearing upon value and his own general knowledge of the elements going to establish it."Bennett v. New Haven Redevelopment Agency,148 Conn. 513, 516. This case aptly points out that "[u]ltimately, the determination of the value of the land depended on the considered judgment of the referee, taking into account the divergent opinions expressed by the witnesses and the claims advanced by the parties."
In summary, therefore, this court must accept the finding and conclusion of the referee that the sum $176,379, "the cost of rearranging the store as nearly as can be to its present operating efficiency," was required to be taken into account in finding the "before and after" value of the plaintiff's property.
The case of Morgan v. Hill, 139 Conn. 159, 161, emphasizes that "[n]othing in our law is more elementary than that the trier is the final judge of the credibility of witnesses and of the weight to be accorded their testimony." This case points out that it is "the prerogative of the referee to accept the testimony of the plaintiff's experts rather than that offered by the defendant's. The exercise of this right would be reviewable if it were apparent that the referee had misapplied or overlooked, or had *Page 315 
given a wrong or improper effect to, some test or consideration which it was his duty to regard."
It is clear, therefore, that if the conclusions of fact found by the referee were "properly reached on the basis of the subordinate facts found and the applicable principles of law," these conclusions cannot be attacked in this court. Altman v. Hill,144 Conn. 233, 239; see Bennett v. New HavenRedevelopment Agency, supra.
It is manifest that the amount of the award is drastically higher than anticipated by the defendant. It may be noted, however, that the commission is not bound to continue with the planned improvement and has the right to discontinue its plan if it deems it economically not feasible because of the cost imposed by this assessment award. Trumbull
v. Ehrsam, 148 Conn. 47,56.
The defendant in its motion to correct the report of the state referee, dated March 5, 1965, sought extensive corrections to his report dated November 9, 1964. The referee disallowed this motion, except as to certain minor aspects, and filed his corrected report of April 28, 1965. Thereafter the defendant filed its objection to acceptance of referee's report dated November 9, 1964, as corrected April 28, 1965. This essentially attacks the findings of fact and the conclusions drawn therefrom by the referee. Corrections cannot be made to the report as corrected unless a material fact has been found without evidence, or there has been a failure to find an admitted or undisputed fact, or a fact has been found in such doubtful language that its real meaning does not appear. Practice Book § 359; Northeastern GasTransmission Co. v. Warren, 144 Conn. 217, 222. This court does not find such to be the situation here and, therefore, makes no corrections to the *Page 316 
referee's report of November 9, 1964, as corrected April 28, 1965.
The defendant's objection to acceptance of referee's report dated November 9, 1964, as corrected April 28, 1965, is overruled. The court accepts the report of the referee as corrected.
 Judgment may enter in favor of plaintiff assessing damages in the amount of $218,379.