**Bernard RUNSER and Mary D. Runser**

v.

**CITY OF WATERVILLE.**

Supreme Judicial Court of Maine.

April 12, 1976.

Marden, Dubord, Bernier, & Chandler by Albert L. Bernier, Waterville, for plaintiffs.

Shiro & Jabar by Burton G. Shiro, Waterville, for defendant.

Before DUFRESNE, C. J., and WEATHERBEE, POMEROY, WERNICK and ARCHIBALD, JJ.

ARCHIBALD, Justice.

On appeal by the defendant.

The City of Waterville (City), in the exercise of its power of eminent domain, acquired title to certain premises owned by the plaintiffs who, acting pursuant to Rule 80B, M.R.C.P., sought a review of the damages awarded by the City. The parties agreed to a reference, reserving the right to object to the report of the referee. A hearing was held, resulting in a report finding damages totaling $31,400.00. The report was accepted by a Justice of the Superior Court, over objection, who ordered judgment for the plaintiffs in accordance with the referee's report and the City seasonably appealed.

We deny the appeal.

Our scope of review is limited by the well established rule that when a referee is faced with factual disputes his resolution of them is conclusive if supported by any credible evidence. *Carpenter v. Mass. Bonding & Ins. Co.*, 161 Me. 1, 206 A.2d 225 (1965); *see also Cunningham v. Cunningham*, 314 A.2d 834 (1974).

The validity of the taking has been conceded, leaving as the only issue the amount of damages awarded.

The City's purpose for acquiring title to the plaintiffs' property is clearly set forth in the "Notice of Layout and Taking," as follows:

"That public exigency requires the laying out, altering, widening and extension of the land and facilities of the Waterville Robert LaFleur Airport and providing unobstructed air space and safe approaches for the landing and taking off of aircraft and to place and maintain suitable marks and lights for the safe operation thereof, and to prevent the hindrance of the proper and safe development and use of said airport, its facilities and landing fields."

The plan of the expanded Waterville Airport, as well as the "Notice of Layout and Taking," required the acquisition of a strip of land approximately 1500 feet in width, the center line of which is the proposed center line of an extension of the

north-south runway at the Waterville Airport, and with an overall length of approximately 2200 feet. In order to accomplish this total acquisition, property of five abutting land owners was taken, the plaintiffs owning the land at the southeasterly corner thereof.

The plaintiffs' property was located in a rural area. They acquired their title in 1970, the total area being approximately forty acres for which they paid $10,000.00. After purchasing this property they proceeded with the construction of a modernistic and somewhat unusual dwelling (a "Yankee Born Design"), and did so at a cost of $55,000.00.

The Runsers had some knowledge that the City was contemplating a southerly extension of the airport runway and had made inquiry of various officials as to the City's plan. Being unable to obtain specific information, they proceeded with the home construction and completed it before the City commenced the eminent domain proceeding.

The initial taking by the City included the newly completed home but when this was discovered the taking was amended to exclude a rectangular lot 400 feet in length and 282.5 feet in depth on which the house was situated. The damages offered by the City for the taking included only the land actually taken (12.93 acres). An appraiser for the City expressed his opinion that the land thus acquired had a fair market value of $3,000.00, although the appraiser for the owners was of the opinion that this acreage should be valued at $4,000.00. The referee, considering the evidence conjoined with his view of the property, concluded that just compensation for the 12.93 acres was $3,400.00. It is not seriously argued by either party that the

conclusion of the referee in this regard was erroneous. The real problem arises because the referee determined that the 400 ft. x 282.5 ft. house lot, with the buildings thereon, had suffered "severance" damage in the sum of $28,000.00, and the purpose of our review will be to determine whether there was any *credible* evidence to support this conclusion.

The City has argued that there was no evidence of any damage because it had not extended the airport runway nor had it yet imposed any restrictions on the erection of any obstacle on any of the real property condemned (the 1500′ x 2200′ strip). However, this argument is advanced without giving proper consideration to, first, the purpose underlying the taking [1] (as previously quoted herein) and, second, by failing to recognize that all damages resulting from a taking by eminent domain accrue simultaneously with the taking. As stated in *Joy v. Water Co.,* 85 Me. 109, 116, 26 A. 1052, 1054 (1892), the rule governing assessment of damages is that

> "compensation is made once for all, and is to be estimated according to the full measure of the right acquired . . . and not merely according to the mode and time of the exercise of that right in the first instance."

In short, we recognize that all damages must be recovered in one condemnation proceeding,[2] and the damages so awarded must be

> "for all time and for all public uses fairly contemplated at the time the land was taken."

*Parsons v. Railway,* 101 Me. 173, 175, 63 A. 728, 729 (1906); *State v. Yates,* 104 Me. 360, 71 A. 1018 (1908). Therefore, if the

---

1. "[I]n assessing damages, it is not what the condemnor actually does, but what it acquires the right to do, that determines the quantum of damages." Nichols, Eminent Domain, § 16.1.

2. *Peaks v. County Commissioners,* 112 Me. 318, 92 A. 175 (1914); *Taylor v. Street Railway,* 91 Me. 193, 39 A. 560 (1898); see *Milstar Mfg. Corp. v. Waterville Urban R. Auth.,* 351 A.2d 538 (Me.1976); *Williams v. Me. Highway Commission,* 157 Me. 324, 172 A.2d 625 (1961).

fair market value of the Runsers' remaining land was diminished by virtue of that which was taken, they are legally entitled to recover such damages in this action and not hereafter.

■ The first question which must be resolved is whether there was any evidence presented to the referee on which he could predicate a finding of severance damage.

It is true that the appraiser for the City concluded that there was no severance damage and he made no appraisal of the Runsers' improvements. However, the owners' appraiser disagreed and concluded that "an informed buyer" would arrive at a market value appreciably less than what the fair market value was prior to the taking, were such hypothetical person to buy the 400 ft. x 282.5 ft. lot, with the house thereon, immediately after the taking. We conclude that there was competent evidence to support a finding of severance damage by the referee.

The more critical question is whether the owners' appraiser adopted an acceptable appraisal technique in determining the quantum of this damage.

In summary, he testified that the Runser property was "very unique" and that

"the only way of measuring the damage to the property is by the cost to cure. We have no sales to go by in measuring damage and the cost to cure the damage is recognized as a measure of damage where no other method is available or when the cost to cure is the lowest cost."

He pointed out that this particular dwelling lot was not in close proximity to others similarly situated and that he could find no sales of comparable property from which value estimates of the Runsers' property could be made. Lacking the criteria to support an appraisal by this more conventional method, he adopted the so-called cost to cure approach. Using this appraisal technique the appraiser concluded that the depreciated value of the dwelling house and lot was $17,000.00, it having suffered an economic obsolescence of $28,000.00 from what the appraiser deemed its fair market value to have been before the taking, namely, $45,000.00. This figure was arrived at (and its accuracy was not disputed) by a determination that it would cost $28,000.00 to move the structure from the 400 ft. x 282.5 ft. lot to adjacent land owned by the Runsers outside the potential air corridor created by the acquisition of the 1500 ft. x 2200 ft. gross taking.

The Maine Court has never addressed itself directly to the propriety of this appraisal technique.

Cases in other jurisdictions support the proposition that using a "cost to cure" approach is appropriate but only if it results in an appraisal of the diminished fair market value of the remaining property. However, the "cost to cure," per se, is not a recoverable item but may be used as evidence to support an ultimate conclusion of a reduction in fair market value, and may be used as evidence of this damage only when it is no greater in amount than the decrease of the fair market value of the property if left "uncured." *Harmony Lanes v. State, Dept. of Roads,* 193 Neb. 826, 229 N.W.2d 203 (1975); *People v. Flintkote Company,* Cal.App., 70 Cal.Rptr. 27 (1968); *Dressler v. City of Covington,* 208 Va. 520, 158 S.E.2d 660 (1968); *First National Stores, Inc. v. Town Plan & Zon. Com'n,* 26 Conn.Sup. 302, 222 A.2d 228 (1966). In Illinois the rule is stated as follows:

"[T]he measure of recovery for damages to land not taken is the reduction of its value resulting from the improvement, and . . . expenditures made and costs incurred in adapting the land to use after improvement are relevant, if reasonable and economical, as evidence of the depreciation in value, but not as recoverable items in themselves."

*Department v. Galley,* 12 Ill.App.3d 1072, 1076, 299 N.E.2d 810, 814 (1973); *see also*

*Balog v. State, Department of Roads,* 177 Neb. 826, 131 N.W.2d 402 (1964); *In Re Gillen Place, Borough of Brooklyn,* 304 N.Y. 215, 106 N.E.2d 897 (1952); *but see Iowa-Wisconsin Bridge Co. v. United States,* 84 F.Supp. 852, 114 Ct.Cl. 464 (1949).

■■ Real estate appraisal, although by its very nature not an exact science since fair market value is at best an approximation, is an area where expert opinion is admissible. Given proper circumstances, the "cost to cure" technique is a rational method which expert appraisers may use in determining severance damage.

The City argues that *Curtis v. Maine Highway Commission,* 160 Me. 262, 203 A. 2d 451 (1964), is dispositive of its right to have this appeal sustained. As we read *Curtis* definitive evidence of the specific cost required to install water lines on undeveloped property was improperly received because (1) it was premised on pure speculation, and (2) it dealt only with specific cost and was not a basis for an estimate of fair market value. Unlike the facts in *Curtis,* the Runsers' appraiser was faced with the realism of the City's already acquired right to extend the airport, and the then existing building lying within perimeters adversely affected by the expansion made possible by the acquisition of 12.93 acres of the Runsers' land. Furthermore, he used the "cost to cure" type of appraisal to support his ultimate conclusion of the quantum of severance damage, and not as an independent item of damage. The case is thus readily distinguishable.

There was no error when the Justice below accepted the referee's report.

The entry is:

Appeal denied.

DELAHANTY, J., sat at argument but did not participate further in the case.

All Justices concurring.