**Bernard L. and Mary D. RUNSER**

v.

**CITY OF WATERVILLE.**

Supreme Judicial Court of Maine.

Argued Jan. 3, 1995.

Decided March 9, 1995.

James M. LaLiberty (orally), Butler, Whittier & LaLiberty, P.A., Waterville, for plaintiffs.

Albert V. Federle (orally), City Sol., Waterville, for defendant.

Before WATHEN, C.J., and ROBERTS, GLASSMAN, CLIFFORD, RUDMAN, DANA and LIPEZ, JJ.

LIPEZ, Justice.

The City of Waterville appeals from the judgment of the Superior Court (Kennebec, *Mills, J.*) awarding damages of $31,000 to Bernard L. and Mary D. Runser for the City's taking of an avigation easement[1] over their property. Because we disagree with the City's contention that the severance damages awarded to the Runsers in 1971 for a previous taking preclude the award of further damages, we affirm the judgment.

In 1971, the City of Waterville took by eminent domain a 12.93 acre tract of land from the Runsers' property adjacent to the Waterville municipal airport, leaving the Runsers with approximately 27 acres of land. Although the notice of taking initially included land on which the Runsers' newly completed home was located, the notice was later amended to exclude a rectangular lot, 400 feet in length and 282.5 feet in depth, on which the house was situated. The Runsers sought damages for the 12.93 acres of land taken and severance damages for the land they retained. The Superior Court accepted the report of a referee and awarded the Runsers $3,400 for the property taken by the City and $28,000 in severance damages. On appeal, we upheld the award of damages. *Runser v. City of Waterville*, 355 A.2d 747 (Me.1976) [hereinafter *Runser I*].

---

1. The easement reserved a right of way for the unobstructed air passage of aircraft in and through the airspace over the Runsers' property for the purpose of providing clearance for the airplanes landing or taking off from the runway adjacent to the Runsers' property.

Seventeen years later, the City passed an ordinance acquiring an easement in the air space over the 2.95 acre house lot of the Runsers specifically excluded from the first taking. After the City brought a declaratory judgment action to determine the validity of the avigation easement, the Runsers entered into a settlement agreement with the City pursuant to which an order was entered declaring the avigation easement valid, and specifically preserving the Runsers' right to pursue damages for the taking. In that settlement agreement the City waived any procedural bars to the Runsers' appeal for damages and "affirmatively acknowledge[d] that the [Runsers] have the right to bring a damage appeal pursuant to 23 M.R.S.A. § 3029."[2]

At the time the City entered into the settlement agreement with the Runsers, City officials were unaware of our decision in *Runser I*. After they became aware of this case, the City alleged in response to the Runsers' present action for damages that any recovery was barred by the defense of *res judicata*. The trial court ruled that the City had waived this *res judicata* defense because its settlement agreement with the Runsers precluded the City from raising any procedural bars to the Runsers' damage claim. Asserting that *res judicata* is a matter of substance, not procedure, the City continues to argue on appeal that the damages awarded by the trial court were precluded by the severance damages awarded to the Runsers in 1971.

Whether the City has properly labeled its argument as one of *res judicata* is unclear. Whether such argument should be labeled as one of substance or procedure under the settlement agreement is also unclear. Because the City is wrong on the merits of its damages argument, we decline to discuss these secondary issues.

**2.** 23 M.R.S.A. § 3029 (1992) provides in part:

Any person aggrieved by the determination of the damages awarded to owners of property or interests therein under this chapter may, within 60 days after the day of taking, appeal to the Superior Court in the county where the property lies.

**3.** At the final hearing before the trial court, counsel for the City stated the argument this way:

*Runser I*

The City misreads *Runser I*. In that case, as already indicated, we affirmed a $28,000 award of severance damages for the house lot. The appraiser for the Runsers testified before the referee that the only way he could measure the damage to the house lot was by the "cost to cure." That is, the appraiser determined that it would cost $28,000 to move the house from the house lot to adjacent land owned by the Runsers outside the potential air corridor created by the acquisition of the 12.93 acres. In approving this methodology for determining the diminished fair market value of the remaining property, we were careful to point out that

the 'cost to cure,' *per se*, is not a recoverable item but may be used as evidence to support an ultimate conclusion of a reduction in fair market value, and may be used as evidence of this damage only when it is no greater in amount than the decrease of the fair market value of the property if left 'uncured.'

*Runser*, 355 A.2d at 750 (citations omitted).

Ignoring the emphasis in our decision that the "cost to cure" was simply a technique for determining the reduction in the fair market value of the house lot because of the taking of the adjacent 12.93 acres, the City argues that the Runsers are not entitled to any additional damages for the 1988 taking because they took $28,000 in 1971 as the "cost to cure" and kept their house on the lot. Having made this choice to stay where they were, the City argues, the Runsers cannot now complain about any additional impact of the airport on their house lot.[3]

The "cost to cure" was not a discretely recoverable item. The Runsers did not have to move their house as the price of accepting the $28,000 in severance damages. By stay-

Had they moved the house to somewhere else on the remaining 24 acres [sic], there wouldn't have been any intrusion of air space. But they decided not to. They were given the wherewithal back in '76 to move that house. That was their damage. That was the damage that they were entitled to once and for all, and they determined not to use it to move the house. So, the City's argument—they've had their cake, they've eaten it, they're not entitled to have another cake handed to 'em.

ing, they did not have to accept any additional uses of their house lot by the City not "fairly contemplated" by the first taking.[4] By arguing to the contrary, the City ignores the logic of the taking of the avigation easement in this case. If the City felt that the avigation easement was a use fairly contemplated by the taking in 1971, they would never have commenced the taking proceedings in 1988 to acquire a property right they already had. The City's own actions in this case belie any contention that the avigation easement was "fairly contemplated" by the 1971 taking.

*The Damages for the Avigation Easement*

Although the City could have introduced evidence before the trial court challenging the damages claimed by the Runsers for the avigation easement, the City did not introduce any such evidence.[5] Rather, it chose to rely on its legal argument that the damages awarded for the 1971 taking barred the Runsers from claiming any additional damages for the avigation easement.[6] Because the City offered no evidence challenging the Runsers' appraisal of the loss to the value of their property because of the avigation easement, the Court properly determined the damages based on the estimates provided by the Runsers.

The entry is:

Judgment affirmed.

All concurring.

---

**4.** This "fairly contemplated" language comes from *Runser I:*

> we recognize that all damages must be recovered in one condemnation proceeding, and the damages so awarded must be 'for all time and for all public uses fairly contemplated at the time the land was taken.'

*Runser,* 355 A.2d at 749 (citation omitted).

**5.** Although the court ruled pursuant to the Runsers' motion in limine that the City could not offer evidence solely to support the argument that the damages awarded for the 1971 taking absolutely barred a damages award for the second taking, the Court also ruled that "documents would not be excluded if offered on the substan-

tive issue of the proper measure of [the Runsers'] damages resulting from the 1990 taking." The City, however, declined the opportunity to show that the damages awarded in the first taking minimized the damage sustained by the Runsers in the second taking. Instead, the City rested on its legal argument that the 1971 damages award precluded a further award as a matter of law.

**6.** The City did acknowledge additional damage to the house lot in 1988 in the amount of $223.63 when 58 trees that penetrated into the air space reserved for the aircraft had to be topped. This acknowledgment is also contrary to the City's legal argument that the uses involved in the avigation easement were contemplated by the 1971 taking.