RAMIE MICHAUD AND DELIA R. MICHAUD
*vs.*
CITY OF BANGOR

Penobscot.    Opinion, December 20, 1963.

*Blanchard and Blanchard,* for Plaintiffs.

*Abraham J. Stern,* for Defendant.

SITTING: WILLIAMSON, C. J., WEBBER, TAPLEY, SULLIVAN, SIDDALL, MARDEN, JJ.

MARDEN, J.    On appeal from judgment entered upon verdict directed for the defendant.

The City of Bangor, a municipal corporation, acting under its building code having to do with unsafe buildings, purported to condemn, as a nuisance, a building belonging to the plaintiffs. The city ordinance incorporates verbatim Sections 25-28, inclusive, of Chapter 141 of the Revised Statutes of 1954, Nuisances. The proceedings were instituted by the introduction of an order at the council meeting of the City of Bangor held on September 25, 1961 which order called for an adjudication that the building belonging to the plaintiff, Ramie Michaud, "be a nuisance or dangerous and that the same should be demolished." The order was tabled on September 25, 1961 and a hearing thereon assigned for the council meeting of October 23, 1961. Although the building inspector of the defendant city knew Ramie Michaud's address by reason of Mr. Michaud's having previously recorded it when he sought permission to tear down the building in question and although the identification of Delia R. Michaud as a joint owner was determinable by inquiry or examination of the records at the Registry of Deeds, notice of the October 23, 1961 meeting was given only by three successive weekly publications in the local newspaper. On October 23, 1961, no one appearing in opposition thereto, the City Council passed an order "that the building * * * owned by Mr. Ramie Michaud of 105 Pine Street, is adjudged to be a nuisance or dangerous and that the same should be demolished * * *." A copy of this order was delivered to Ramie Michaud on October 24, 1961, who sought no "appeal" provided for in the ordinance and statute referred to below. On April 4, 1962 the Chief of the Fire Department, who in return had received orders from the Building Inspector, after allegedly removing the contents of the building, burned the building.

Plaintiffs seek compensation for the building, for the destruction of grass and shrubbery incidental to the burning and for the value of personal property claimed to be within the building at the time of its incineration.

At the close of the evidence, upon motion, a verdict was directed for the defendant from which the plaintiffs appeal.

The basis of the action resulting in the intentional destruction by fire of the plaintiffs' building is the order introduced before the City Council on September 25, 1961, and passed on October 23, 1961 and we are faced first with the question of whether there were a valid determination of the character of the plaintiffs' building as a nuisance upon which all subsequent action was premised. Section 25 of Chapter 141, R. S., 1954, incorporated in Chapter IX, Art. I, subsection 105 of the building code of the City of Bangor, provides, in its pertinent part, that when the municipal officers of a Town "after personal notice in writing to the owner of any burnt, dilapidated or dangerous building, or by publication in a newspaper in the same county, if any, 3 weeks successively, otherwise in the state paper, and after a hearing of the matter, adjudge the same to be a nuisance or dangerous, they may make and record an order prescribing what disposal shall be made thereof, * * *."

The sufficiency of the notice to the plaintiff owners by this publication is challenged as being insufficient within the requirements of the "due process" clause of the Fourteenth Amendment to the Constitution of the United States, and Section 6, Article 1, of our State Constitution. The cited section of our State Constitution guarantees to the citizen the right not to be deprived of his property "but by judgment of his peers, or the law of the land." *Bennett* v. *Davis,* 90 Me. 102, 105, 37 A. 864. The terms "law of the land" and "due process of law" are constitutional terms and are identical in meaning. *Jordan* v. *Gaines,* 136 Me. 291, 8 A. (2nd) 585. Notice and opportunity for hearing are of the essence of due process of law. *Randall* v. *Patch,* 118 Me. 303, 305, 108 A. 97. Did the terms of Section 25, Chapter 141, R. S., 1954, which upon its face offers alternatively personal notice in writing to the owner of the building, or

notice by publication, meet in its publication provisions, the constitutional test of "due process"? The notice to which one is entitled under "the law of the land" as expressed in the Maine Constitution, and to constitute "due process" under the federal Constitution is notice that "is reasonably calculated to give him actual notice of the proceedings and an opportunity to be heard." *Milliken* v. *Meyer,* 61 S. Ct. 339, 343 (under headnotes 6-10), rehearing denied, 61 S. Ct. 548; *Mullane* v. *Central Hanover Bank & Trust Co.,* 70 S. Ct. 652, 657 (under headnote 8) ; *Schroeder* v. *City of New York,* 83 S. Ct. 279, 282 (under headnotes 2-4).

> "The general rule that emerges from the Mullane case is that notice by publication is not enough with respect to a person whose name and address are known or very easily ascertainable and whose legally protected interests are directly affected by the proceedings in question." *Schroeder, supra.*

The notice in the present case purporting to inform Ramie Michaud and Delia R. Michaud that one of their buildings was charged with being a nuisance and subject to demolition did not satisfy constitutional requirements and the determination of nuisance and danger attributable to the reference building, and that the same should be "demolished," was a legal nullity. The reference ordinance of the City of Bangor and the statute incorporated therein (Sections 25-28, Chapter 141, R. S., 1954) must be read as requiring, within the circumstances of this case, personal notice to the building owners.

We have at this point a vote by the City Council of Bangor to do an illegal act, which act was executed by the city building inspector and the city fire department.

The act of demolition, properly premised, was within the ordinant power of the city and was, therefore, not *ultra vires,* McQuillin on Municipal Corporations, 2nd Ed. 1947, Vol. 6, § 2808, *Bator et al.* v. *Ford Motor Co.,* 257 N. W. 906,

913 (under headnotes 6, 7) (Mich. 1934), *Hathaway* v. *Osborne*, 55 A. 700 (R. I., 1903), — with resultant nonliability. *Seele* v. *Deering*, 79 Me. 343, 347, 10 A. 45, and *Wilde* v. *Madison*, 145 Me. 83, 91, 72 A. (2nd) 635.

What, then, of the relation, under these circumstances, of the building inspector, personnel of the fire department, and the City of Bangor? The participation by the building inspector and members of the fire department, upon the record before us (absent the City Charter), was not within the scope of their duties as public officers in their respective capacities.

The provisions of the statute (Sections 10-19, inclusive, Chapter 97, R. S.) which require a city of the size of Bangor to appoint an inspector of buildings and which fix his duties, charge such appointee with no responsibility for action upon a "burnt, dilapidated or dangerous building" (Section 25, Chapter 141, R. S.). The provisions of Chapter 97, R. S., Fire Departments and Fire Prevention, §§ 21-23, do not charge the chief of a fire department, and ex officio a fire inspector, with any responsibility as to a "burnt, dilapidated or dangerous building," under Chapter 141, *supra*. The action of these individuals here was not, as public officers within the scope of their authority legally declared. Their respective conduct was instigated by the City Council order directing that the Michaud building be "demolished," by a "letter" order from the Building Inspector to the Chief of the Fire Department and a verbal order from the Chief of the Fire Department to fire department employees. Additionally, in pre-trial interrogatories prepared by plaintiffs, the defendant replies "yes" to the question "Did the defendant through its agent, agencies or departments start the fire * * * that destroyed * * * buildings * * * of the plaintiffs?"

The subject of tort liability for municipal corporations has been one of controversy in both text and case law. See

Annot. 120 A. L. R. 1376 and Annot. 60 A. L. R. (2nd) 1198. The diversity among respective state statutes, municipal charters, ordinances, and court decisions upon them, have resulted in great confusion in the application of a given set of facts to governmental, legislative, propriety, and ministerial functions, with the result that it is very difficult to recognize cases on point from other jurisdictions. This comment applies to cases briefed by counsel and not adopted herein.

The line of cases which we hold governs the present controversy begins with *Woodcock* v. *Calais,* 66 Me. 234, wherein the city government of Calais passed an order "that the street commissioners be directed forthwith to cause all fences now on the public streets to be removed." In an action of trespass arising out of an act of the street commissioner under this order the court discusses the character of municipal corporations and their peculiar liabilities and states (p. 235) that:

"The two phases of character presented by municipal corporations, and the peculiar liabilities which attach to each, (in reference to the different capacities of officers, whether as agents of the town, or public officers) are fully recognized * * * in this state * * *.

"These, (referring to cited cases) * * * maintain the general doctrine that municipal corporations, so far as their public character is concerned, * * *, are not liable to a private action for the unauthorized or wrongful acts of their officers, even while acting in the line of their official duties, unless made so by statute; * * * that their powers and duties are prescribed and imposed by general statute alike on all such officers, and not by the cities and towns which choose them; that their official tenure, and the manner of performing their official duties do not depend upon the will of their immediate constituencies; and that in a word they are strictly public officers, and when in the discharge

of their public duties, they in no legal sense sustain to their corporation the relation of servant or agent.

* * * * * * * * *

"* * * These decisions would have been decisive of the case at bar had the commissioner acted solely in his public capacity, and upon his own responsibility. * * * The orders which he may have received from the mayor or city solicitor, * * * could not affect his relative status to the city; for they were but public officers themselves, and could not bind the city in respect to the commissioner's acts. * * * But the fact that he was expressly 'directed' by the city government to cause all fences on the street to be removed, and that while attempting to follow these directions he committed the trespass * * *, withdraws this case from the application of the principle applicable to cases of public officers. For while he was a public officer, * * * still the city * * * chose by positive, formal vote to direct the commissioner. * * * He did act; and in his action he became *quoad hoc* the city's agent; and we are of the opinion that the superior must respond." *Woodcock, supra.*

"The distinction between the two classes of cases is clear. In the one class the municipality has interfered by giving directions or taking charge of the work by its own agents, as in *Woodcock v. Calais,* * * *. In the other class, the municipality has not interfered 'but has left the work to be performed by the proper public officers, in the methods provided by the general laws.' " *Goddard* v. *Harpswell,* 84 Me. 499, 502, 24 A. 958.

" * * * (U)nquestionably a town may render itself liable even for the unauthorized or unlawful acts of such officers in the performance of corporate duties imposed by law upon the town, provided such acts are done by its direct authority * * *.

"This, however, is not upon the ground that the officers, as such, were the agents or servants of the town, but that by the town's interference and di-

rection it has made them such, and therefore rendered itself liable for their acts." *Bryant* v. *Westbrook,* 86 Me. 450, 453, 29 A. 1109.

See also *Bulger* v. *Eden,* 82 Me. 352, 19 A. 829 for discussion.

The defendant specifically authorized the demolition of plaintiffs' property and sought to accomplish it by subordinates acting not as public officers, but as special agents for whose acts it is responsible.

The imposition of tort liability upon a municipal corporation under these circumstances is not peculiar to Maine. See 38 Am. Jur., Municipal Corporations §§ 583, 597; *Thayer* v. *City of Boston,* 19 Pick. 511 (Mass. 1837); *Ashley* v. *Port Huron,* 35 Mich. 296 (1877); 24 Am. Rep. 552, 556; *Hathaway, supra; Albert* v. *City of Muskegon,* 109 N. W. 262, 263 (Mich. 1906); *Persons* v. *Valley City,* 144 N. W. 675, 677 (N. D. 1913).

The parties have stipulated that if this appeal is sustained a new trial is limited to the assessment of damages only.

> *Appeal sustained.*
> *Remanded for assessment of damages.*