Emile BLIER

v.

**INHABITANTS OF TOWN OF
FORT KENT.**

Emile BLIER

v.

**Clarence BLIER.**

Supreme Judicial Court of Maine.

Feb. 19, 1971.

Rudolph T. Pelletier, Madawaska, ·for plaintiff.

James M. Coyne, Caribou, for defendants.

Before DUFRESNE, C. J., and WEBBER, MARDEN, WEATHERBEE and POMEROY, JJ.

DUFRESNE, Chief Justice.

On February 19, 1969 Emile Blier (Plaintiff) recovered judgments in the amount of eighty-four thousand seven hundred fifty-seven ($84,757.00) dollars respectively against both Defendants, the Town of Fort Kent and its employee, Clarence Blier. The Justice below ruled that at the time Plaintiff suffered his injuries the Town of Fort Kent through its employee, Clarence Blier, was engaged in a proprietary activity and the negligent conduct which gave rise to Plaintiff's cause of action was not committed in the course of the Town's discharge of any governmental or sovereign duty. This ruling is not questioned by the parties. The Town's liability insurance carrier paid fifty thousand ($50,000.00) dollars towards the judgments. This sum represented the total amount of coverage carried by the Town as liability insurance on its employees. Fort Kent filed a motion under 14 M.R.S.A. § 157 seeking abatement of the verdict against it in excess of the policy limit of $50,000. The Court granted relief by abating from the judgment against the Town the amount in excess of the insurance policy coverage. Plaintiff has appealed from this particular ruling. We must sustain the appeal.

The pertinent statute, 14 M.R.S.A. § 157, in effect when the Plaintiff received his injuries, which arose out of the negligent operation of a municipal motor vehicle, reads as follows:

(Public Laws 1965, c. 425, Sec. 8–A)

"*§ 157. Governmental agencies*

The State of Maine or any political subdivision thereof or any quasi-municipal corporation or quasi-governmental agency, *whether acting in its governmental or proprietary capacity*, shall be considered to have waived its immunity from liability for damages arising out of its negligent operation of a motor vehicle during the period a policy of insurance is effective covering the liability of such governmental agency. Each policy of insurance issued to such governmental agency shall contain a provision to the effect that the insurer shall be estopped from asserting, as a defense to any claim covered by said policy, that such governmental agency is immune from liability on the ground that it is a governmental agency. The amount of damages in any such case shall not exceed the limits of coverage specified in the policy, and the courts shall abate any verdict in any such action to the extent that it exceeds such policy limit." (Emphasis supplied.)

The Court below in granting relief reasoned that the statute was unambiguous and its broad terms manifested a legislative intent to limit governmental responsibility, when the governmental agency carried liability insurance, to the amount of insurance coverage and that any damages in excess thereof must be abated in any and all cases, whether the damages arose out of an activity within the governmental or proprietary capacity of the governmental unit. With this, we disagree.

At the time of the enactment of 14 M.R.S.A. § 157 by Public Laws 1965, C. 425, Sec. 8–A, it was the settled law of this State that when the employees of a municipal corporation are engaged in what may be called a governmental function, or public duty, the municipal corporation is not liable for their acts of negligence. Bouchard v. City of Auburn, 1935, 133 Me. 439, 179 A. 718. But, when public or governmental use gives way to use for private gain and the municipality is conducting an activity not as a legislatively imposed duty but as a voluntarily undertaken enterprise

for its own immediate profit and advantage as a corporation, although ultimately enuring to the benefit of the public, the performance of acts done in what may be called its private or proprietary character resulting in injury from negligence of its employees is actionable. See, Libby v. Portland, 1909, 105 Me. 370, 74 A. 805; Keeley v. City of Portland, 1905, 100 Me. 260, 61 A. 180. The liability of cities and towns for the negligence of their officers and agents was made to depend upon which of their two classes of powers, that of sovereignty or merely corporate, is being exercised when the damage complained of is done. The exact line of demarcation between the powers is oftentimes difficult to ascertain. For torts in connection with the performance of governmental functions the municipal corporation is not liable, but for negligent conduct in the course of the exercise of proprietary powers, the municipality is governed by the same rules as individuals or private corporations and may be responsible in damages. Anderson v. City of Portland, 1931, 130 Me. 214, 154 A. 572. Such was the common law rule before the legislative change made in 1965.

■ This Court must assume that, in the passage of the 1965 waiver-of-immunity act respecting governmental responsibility for torts arising out of the negligent operation of motor vehicles, the Legislature acted with full knowledge of the common law restrictions upon municipal liability as said limitations had been judicially declared in existing decisions of this Court. See, State v. Webber, 1926, 125 Me. 319, 133 A. 738; 31A C.J.S. Evidence § 132(1), p. 253, and cases cited at note 97.6.

"It is also a presumption that in exercising its prerogative in enacting laws the Legislature does so in view of, and with reference to, existing laws and judicial decisions; and that a particular statute was enacted by it 'in the light' of such judicial decisions as had a direct bearing upon such statute." In re Garthwaite's Estate, 1933, 131 Cal.App. 321, 21 P.2d 465.

"It is to be presumed the Legislature enacted this amendment with a full knowledge of the existing conditions of the common law and of statutes with respect to the subject-matter." T. M. Crutcher Dental Depot v. Miller, 1933, 251 Ky. 201, 64 S.W.2d 466.

Conceding that in the construction of a statute the fundamental rule is the legislative intent, nevertheless when faced with a statute in derogation of the common law, we must in seeking legislative intendment apply the strict construction standard as such a statute is not to be extended by implication. Hunter v. Totman, 1951, 146 Me. 259 at 265, 80 A.2d 401 at 404. Furthermore, we restated in Stanton v. Trustees of St. Joseph's College, 1967, Me., 233 A.2d 718, at page 722 the well established rule of statutory construction that the common law is not to be changed by doubtful implication or overturned except by clear and unambiguous language, and that a statute in derogation of it will not effect a change thereof beyond its clear mandate either by express terms or by necessary implication.

■ In determining the effect and meaning of the 1965 act, this Court with these presumptions as guidelines in mind may look to the public policy of the state and any alteration thereof to be achieved, the condition of existing law, the object to be promoted by the legislation, the relief to be afforded, and any other facts throwing light on the purpose and intention of the Legislature. Legislative expression must be read in the light of the lawmakers' purpose as the object the statute designs to accomplish oftentimes furnishes the right key to the true meaning of any statutory clause or provision. Middleton's Case, 1939, 136 Me. 108, 3 A.2d 434.

The real purpose of the act was to permit limited recovery of compensatory dam-

ages from the State of Maine or any political subdivision thereof, meaning any municipal agency such as a city or town, including any quasi-municipal corporation or quasi-governmental agency, in favor of persons injured or damaged by reason of the negligent operation of any governmental motor vehicles. Recovery was restricted to the limits of policy coverage and was conditioned on the existence of such coverage at the time of the negligent conduct. The obvious object of the statute is, as the language of the legislation makes clear, that the governmental agency involved, in the circumstances stated, "shall be considered to have waived its immunity from liability for damages" and that "each policy of insurance issued to such governmental agency shall contain a provision to the effect that the insurer shall be estopped from asserting, as a defense to any claim covered by said policy, that such governmental agency is immune from liability on the ground that it is a governmental agency." The manifest relief within the contemplation of the Legislature was to take away from governmental agencies including the State of Maine the defense of sovereign immunity and no more. There appears no clearly expressed legislative design to broaden the scope of the doctrine of sovereign immunity.

To interpret the statute literally as the Justice below did would mean that in proprietary activities a municipality would enjoy the defense of sovereign immunity beyond insurance coverage. This would be a substantial departure from the common law doctrine of sovereign immunity, since that defense, at the time of the passage of the act, was not available to political subdivisions of the state in cases of tortious conduct in the operation of governmental motor vehicles when the governmental agency was engaged in the exercise of mere proprietary functions. Such a construction would very much offset, if not practically nullify, the intended beneficial results of the legislation, its object being to disallow the sovereign immunity defense during the period of insurance coverage in those cases where such defense was available. We cannot ascribe such inconsistency to the Legislature.

It is the duty of the court to interpret the language of a statute so as to carry out the obvious purpose which the Legislature had in mind. Steele v. Smalley, 1945, 141 Me. 355, 357, 44 A.2d 213; Emple Knitting Mills, Aplt. v. City of Bangor, 1959, 155 Me. 270, 274, 153 A.2d 118.

We must avoid a construction which leads to a result clearly not within the contemplation of the lawmaking body. Greaves v. Houlton Water Company, 1948, 143 Me. 207, 212, 59 A.2d 217; Town of Ashland v. Wright, 1943, 139 Me. 283, 285, 29 A.2d 747.

The doctrine of the sovereign immunity of the State is an outgrowth of the medieval concept that "the King can do no wrong." It was extended to all political and governmental agencies of the State on the ground that since the State was not subject to suit nor liable for the torts or negligence of its agents, likewise subdivisions of the State, as governmental agencies of the State, were exempted to respond in damages for the negligent acts of their servants to the same extent as the State itself was. The basic concept underlying the whole law of torts, however, is that liability follows negligence, and that individuals and corporations are responsible for the negligence of their agents and employees acting in the course of their employment. The doctrine of governmental immunity, running directly counter to that basic concept, has been subjected to judicial restrictions which have narrowed the range of the doctrine. The courts generally, including the Maine Court, have classified the activities of municipal corporations or state agencies as "governmental" and "proprietary", with full liability in tort imposed if the activity was classified as "proprietary" and non-liability

if it was viewed as "governmental". This distinction between governmental and proprietary functions of units of local governments or state agencies was designed undoubtedly to alleviate the injustice of the results that would flow from an all-inclusive doctrine of sovereign immunity. See, Anderson v. City of Portland, supra; Wilde v. Inhabitants of the Town of Madison, 1950, 145 Me. 83, 87, 72 A.2d 635, 638. Furthermore, our Court relaxed the rule of non-liability where the tortious act was done by a municipal agent or employee acting not as a public officer, but rather as a special agent following specific authority or order of the governmental unit. Under such circumstances, our Court has said that the doctrine of respondeat superior would apply. Woodcock v. City of Calais, 1877, 66 Me. 234; Michaud v. City of Bangor, 1963, 159 Me. 491, 196 A.2d 106.

These judicial discriminations in the law of governmental responsibility for tort, resulting in incongruities from attempts to fit particular conduct into either the governmental or proprietary class of activity, have brought the doctrine of governmental immunity into disrepute. Legal writers and scholars in articles and texts almost unanimously severely criticized the continued judicial support given to the doctrine. Some courts have repudiated it and changed their common law without legislative direction. See, Prosser, Torts § 109 (2d ed. 1955); Borchard, Governmental Liability in Tort, 34 Yale L.J. 1 (1924); Borchard, Governmental Responsibility in Tort, 36 Yale L.J. 757 (1927); Maine Law Review, Vol. 16, p. 74 (1964); Bowden v. Kansas City, 1904, 69 Kan. 587, 77 P. 573, 66 L.R.A. 181, 105 Am.St.Rep. 187, 1 Ann.Cas. 955; Williams v. City of Detroit, 1961, 364 Mich. 231, 250, 111 N.W.2d 1; Muskopf v. Corning Hospital District, 1961, 55 Cal.2d 211, 11 Cal.Rptr. 89, 359 P.2d 457; Molitor v. Kaneland Community Unit District No. 302, 1959, 18 Ill.2d 11, 163 N.E.2d 89, 90–96; Colorado Racing Commission v. Brush Racing Ass'n, 1957,

136 Colo. 279, 316 P.2d 582, 585–586; Hargrove v. Town of Cocoa Beach, Fla., 1957, 96 So.2d 130, 132–134, 60 A.L.R.2d 1193.

Courts generally have recognized the inherent injustice of a rule which denies recovery of damages for remissness in the performance of purely governmental functions of municipalities and permits the same for negligent performance of duties which, although not ordained by the Legislature, the municipality has undertaken and is performing for the general benefit of the municipality, even though these duties may not be essentially governmental in their nature.

Legislatures in many states have also taken notice of the unjust results of the application of such a rule and by positive enactment did away entirely with the distinction and made municipal corporations liable for the same acts to precisely the same extent as private corporations. See, Chafor v. City of Long Beach, 1917, 174 Cal. 478, 163 P. 670, L.R.A.1917E 685.

These assaults upon the doctrine, whether by commentators, courts or legislators, we may presume, have come to the knowledge of our own Legislature and it was in the spirit of extending the scope of liability of governmental agencies that our lawmakers elected to amend the common law rule of immunity. To read into the act the extension of the immunity rule to negligent conduct in the performance of municipal proprietary functions where damages resulting from breach of duty exceed insurance liability coverage would be to say that the Legislature covertly imbedded in the legislation an effective self-defeating restriction rendering its primary purpose practically nil. Courts will disregard the literal import of statutes to reach the true sense of the law. As stated in Whiting v. Lubec, 1922, 121 Me. 121, 115 A. 896, "[r]easoning and judgment, not the mere bald literalness of statutory phrasing, must guide and control research for a judicious legislative design."

We rule that the Legislature inserted the phrase "whether acting in its governmental or proprietary capacity" improvidently, and that without further express and clear language purporting to extend the scope of the doctrine of sovereign immunity, the true sense of the law of the enactment as a whole was solely to curtail the judicial doctrine and to cut down the defense of governmental immunity to the extent of insurance coverage in tort claims arising out of the operation of motor vehicles in purely governmental activities, and in no way was intended to modify the common law rule of liability respecting municipal responsibility in the operation of motor vehicles in the performance of strictly proprietary duties.

Appeal sustained.

MARDEN, J., sat at argument, but retired before this opinion was adopted.