**Russell E. LERMAN, Plaintiff,**

v.

**CITY OF PORTLAND, et al., Defendants.**

Civ. No. 85–0374–P.

United States District Court, D. Maine.

Dec. 11, 1987.

Robert H. Furbish, Smith & Elliott, Saco, Me., for plaintiff.

William J. Kayatta, Jr., Portland, Me., for defendants.

### ORDER ON PENDING MOTIONS

GENE CARTER, District Judge.

In this action, Plaintiff seeks to recover damages for the demolition of his buildings on India Street in Portland by the City of Portland. Plaintiff alleges, *inter alia*, that the demolition constituted a deprivation of due process under the United States and Maine Constitutions, a taking of property without just compensation under both Constitutions, a violation of 42 U.S.C. § 1983, and a trespass on his property in violation of 14 M.R.S.A. § 7552. Defendant City of Portland has moved to dismiss both the federal and the state law claims and for an order *in limine* concerning the measure of damages.

## The Trespass Claim

Defendant first argues that Plaintiff's claim for damages under Maine's trespass statute is precluded by the immunity provisions of the Maine Tort Claims Act, 14 M.R.S.A. § 8101–8118. Specifically, section 8103 provides in pertinent part: "Except as otherwise expressly provided by statute, all governmental entities shall be immune from suit on any and all tort claims seeking recovery of damages." Although exceptions to immunity are set forth in 14 M.R.S.A. § 8104, none of them can be even broadly construed to deal with the circumstances of this case. Similarly, the trespass statute under which Plaintiff is proceeding makes no reference to a waiver of immunity.[1] Thus, by the express terms of section 8103, the City is immune from suit on Plaintiff's statutory trespass claim.

Plaintiff makes several arguments against such a construction. First, he asserts that because Plaintiff's trespass cause of action is constitutionally based it cannot be abrogated by statute. For this argument he relies primarily on a New Jersey case holding that a malicious prosecution action based on alleged due process violations could proceed against the state despite a tort claims act immunity provision. *See Strauss v. State*, 131 N.J.Super. 571, 330 A.2d 646 (1974). The Court disagrees with Plaintiff's characterization of his claim in this Court as being founded on the constitution; it is founded upon the Maine trespass statute. The same action realleged in other counts asserts claims founded on the Maine and United States Constitutions. As the Court understands the *Strauss* case, the malicious prosecution claim in question was not statutorily based and thus fell into the explicit exception to immunity under the New Jersey Tort Claims Act for claims founded on the state or United States Constitutions.

Plaintiff also argues that municipalities were not immune to suit under the trespass statute, 14 M.R.S.A. § 7552, prior to enactment of the Maine Tort Claims Act, *Michaud v. City of Bangor*, 159 Me. 491, 196 A.2d 106 (1963), and that the statute cannot be read to expand the doctrine of sovereign immunity as it had existed prior to its judicial abrogation. The Court is persuaded for a number of reasons that this argument is incorrect.

First, the legislative history of the Maine Tort Claims Act indicates, as Defendant suggests, that it was intended to provide sweeping governmental immunity except when liability was provided for by statute. Although not determinative on legislative intent, the Judiciary Committee Report on the Act and the legislative debate, *see, e.g.*, 2 Legis.Rec. 1644 (1977) (Remarks of Senator Collins), indicate that the immunity imposed by the Act was to be comprehensive with the exceptions tightly circumscribed. That this was indeed the intent of the legislature is borne out by the language of the statute itself. "Except as otherwise *expressly* provided by statute...." (Emphasis added.)

Plaintiff suggests that because the legislative record and statement of fact for the Tort Claims Act speak of "restoring" and "re-impos[ing]" governmental immunity, the intention was to reestablish it as it was just prior to its abrogation in *Davies v. City of Bath*, 364 A.2d 1269 (Me.1976). This interpretation is belied by the provision in chapter 2, section 5 of Laws 1977, which stated: "For claims arising after the effective date of this Act and before July 1, 1977 [the effective date of section 8104, setting forth the exceptions to immunity], exceptions to section 8103 shall be permitted to the same extent as provided by the

1. The statute in effect at the time provided:
   § 7552. Injury to lands or property
   Whoever cuts down, destroys, injures or carries away any ornamental or fruit tree, timber, wood, underwood, stones, gravel, ore, goods or property of any kind from land not his own, without license of the owner, or injures or throws down any fences, bars or gates, or leaves such gates open, or breaks glass in any building is liable in damages to the owner in a civil action. If such an act or such acts are committed willfully or knowingly, the defendant is liable to the owner in treble damages and, in addition, for the cost of any professional services necessary for the determination of damages, for attorney's fees, and for court costs.

common law of Maine existing prior to October 12, 1976." This provision clearly distinguishes between the exceptions available under the common law and those provided by the new statute.[2]

Although the Maine Law Court has not had the opportunity to address the issue of sovereign immunity as it applies to section 7552, the Court predicts that when presented with the opportunity, the Law Court will follow its recent practice of narrowly limiting governmental liability to areas where it is expressly provided by statute. *See, e.g., Clockedile v. State Department of Transportation*, 437 A.2d 187 (Me.1981); *Rivard v. City of Lewiston*, 516 A.2d 555 (Me. 1986); *Goodine v. State*, 468 A.2d 1002 (Me.1983); *Cushing v. Cohen*, 420 A.2d 919 (Me.1980). The Court does not accept Plaintiff's assertion that prior judicial construction becomes part of the express wording of the statute. Using this theory, Plaintiff states that because it had, before passage of the Tort Claims Act, been construed to apply to government entities as well as other defendants, section 7552 expressly provides for liability.[3] Such a mode of statutory construction would be inconsistent with the approach heretofore taken by the Law Court in applying the Maine Tort Claims Act: "In Maine, sovereign immunity is the rule, and liability for governmental entities [is] the *statutorily* created, narrowly construed exception." *Clockedile*, 437 A.2d at 189 (emphasis added). The Court finds the Superior Court decisions to the contrary unpersuasive. *See Pollard v. County of Cumberland*, No. CV–83–1034 (Me.Super.Ct., Cum.Cty., Feb. 28, 1984);

*St. Peter v. City of Presque Isle*, No. CV–79–144 (Me.Super.Ct., Aro.Cty.1979).

Finally, Plaintiff argues that the Maine Tort Claims Act was not in effect on December 9, 1979, when his buildings were demolished by the City of Portland, because of various legislative enactments and repeals of so-called sunset provisions. The Court accepts the well-reasoned analysis provided by the Attorney General in his opinion letter of January 14, 1980, which concluded that the provisions of the Maine Tort Claims Act in question here have not expired and were at that time in full force and effect.

Since the City of Portland is immune from suit under 14 M.R.S.A. § 7552 by virtue of the immunity provisions of 14 M.R.S.A. § 8103, the Court will dismiss Count V of the Complaint.

### Statute of Limitations

■ Defendant also argues that Plaintiff's claims based on the Maine Constitution are barred by the statute of limitations. Defendant urges that the Court apply either of two statutes: the three-year limitation set forth in 14 M.R.S.A. § 868 for actions to recover damages caused by "the taking of any land, rights or other property to be used for a public purpose when such taking has been authorized by the legislature"; or the two-year limitation found in the Maine Tort Claims Act, 14 M.R.S.A. § 8110, for "every claim against a governmental entity ... permitted under this chapter." Plaintiff argues that section 868 is not applicable because it deals with

---

**2.** Plaintiff relies on *Blier v. Inhabitants of the Town of Fort Kent*, 273 A.2d 732 (Me.1971), in which the Maine Law Court declined to find sovereign immunity under a negligence statute in part because the law in Maine at the time of the enactment of the statute provided for municipal liability for the type of negligence alleged. The Court in *Blier*, however, applied the rule that "the common law is not to be changed by doubtful implication or overturned except by clear and unambiguous language." *Id.* at 734. The language of the grant of immunity itself, quoted in the text, is such clear and unambiguous language. This conclusion is reinforced when one reads the language of chapter 2, section 5 of the Laws of 1977.

**3.** The Court notes that in one of the cases relied upon by Plaintiff for this argument, *Nestle v. City of Santa Monica*, 6 Cal.3d 920, 101 Cal.Rptr. 568, 496 P.2d 480 (1972), the legislature had received a recommendation from the Law Revision Commission that a new section be added to the Tort Claims Act specifically eliminating governmental liability for damages for nuisance (the claim presented in that case). When the legislature did not enact the recommendation, despite what the court described as the "pervasive influence" of the Commission, the court regarded that as a manifest intention that such suits be allowed if they accorded with statutory provisions. *Id.* Such is not the case here.

actions seeking redress for takings accomplished under the power of eminent domain while the city's action here was under the police power. He argues that the Tort Claims Act limitation does not apply because it applies only to actions there permitted and the constitutional claims arise independently of the Tort Claims Act.

The Court agrees with Plaintiff that neither of these statutes applies. Section 868, while applying to actions seemingly very close to the one brought here (actions for the taking of land, authorized by the legislature) also specifies that the land taken is to be used for a public purpose. This clearly refers to the state's power of eminent domain and not the police power, the exercise of which Plaintiff here complains.

The Maine Tort Claims Act limitation is equally inapplicable because constitutional claims are not "permitted" under the Act; they survive it and arise independently of it because statutes may not abrogate constitutional rights.

Although neither of these statutes is directly applicable, Defendant, citing an 1881 case, *Perkins v. Maine Central Railroad,* 72 Me. 95, 99 (1881), urges the Court to adopt one of them because the actions to which they pertain are the most analogous to the actions brought here. The Court cannot accept this argument, for Maine has a general statute of limitations for civil actions which provides that "[a]ll civil actions shall be commenced within 6 years after the cause of action accrues and not afterwards...." 14 M.R.S.A. § 752. The Court of Appeals for the First Circuit, which has recently examined the Maine statutes of limitations in depth, has emphasized that section 752 is a general limitations provision and not merely a residual one. *Small v. Inhabitants of City of Belfast,* 796 F.2d 544, 547 (1st Cir.1986). As the court stated: "It is plainly apparent from the language of this provision as well as from its application by the Maine courts that section 752 is applicable to all tort actions, including personal injury tort actions, *except where the Maine legislature has specifically provided otherwise in a*

*separate statutory provision.* Id. *(Emphasis added.)*

Since there is no specific, separate statutory limitations provision dealing with tort claims brought under the Maine Constitution, the Court finds the general six-year limitation statute applicable. Plaintiff's buildings allegedly were demolished on December 9, 1979. This action was brought on December 2, 1985, within the six-year period. The Court will therefore deny the motion to dismiss the claims brought under the Maine Constitution based on the statute of limitations.

### Federal Claims

### A. *Just Compensation*

■ Defendant asserts, too, that Plaintiff's just compensation claim under the United States Constitution is barred because Plaintiff has not pursued his state remedies. The Court agrees. Maine law provides relief under the Maine Constitution "if plaintiffs' property [is] injured by an act of defendant that was both authorized and reasonably performed, but which resulted in a constitutional 'taking' of the property." *Foss v. Maine Turnpike Authority,* 309 A.2d 339, 344 (Me.1973). Addressing a situation in which a landowner alleged that the application of government zoning and subdivision regulations had effected a taking of his property, the Supreme Court has held that a taking claim is not ripe if plaintiff

did not seek compensation through the procedures the State had provided for doing so. The Fifth Amendment does not proscribe the taking of property; it proscribes taking without just compensation.... Nor does the Fifth Amendment require that just compensation be paid in advance of, or contemporaneously with, the taking; all that is required is that " 'a reasonable, certain and adequate provision for obtaining compensation' " exist at the time of the taking.... If the government has provided an adequate process for obtaining compensation and if resort to that process "yield[s] just compensation," then the property owner "has no claim against the Government"

for a taking.... [I]f a State provides an adequate procedure for seeking just compensation, the property owner cannot claim a violation of the Just Compensation Clause until it has used the procedure and been denied compensation. *Williamson Planning Commission v. Hamilton Bank,* 473 U.S. 172, 194–95, 105 S.Ct. 3108, 3121, 87 L.Ed.2d 126 (1985) (citations and one sentence omitted).[4] Although Maine has no inverse condemnation statute like that relied upon by the Court in *Williamson,* the Court of Appeals for the First Circuit, in interpreting *Williamson,* has made clear that a nonstatutory inverse condemnation remedy must also be pursued before a federal damages claim can be maintained. *Culebras Enterprises Corporation v. Rivera Rios,* 813 F.2d 506, 515 (1st Cir.1987). The action suggested in *Foss* is such a nonstatutory inverse condemnation remedy and must be pursued by Plaintiff before he can assert his federal claim for just compensation.[5]

### B. *Due Process*

■ Finally, Defendant asserts that Plaintiff's due process claim should be dismissed because Plaintiff has had all the process required by the Constitution. Subsequent to receiving notice of the impending demolition, Plaintiff filed with the Law Court a motion for a stay of execution on the judgment. No relief was granted. Plaintiff also filed a Petition for a Temporary Restraining Order in Superior Court stating that he had received notice that his building would be demolished on November 19, 1979 and urging the court to restrain the demolition on the grounds that he had made extensive repairs on the building based on assurances made to him in 1976 by a Portland City official that the order would then be retracted. He also asserted

that several members of the City Council had expressed interest in providing him with a rehearing on the proposed demolition and that he intended to seek relief from judgment under Maine Rule of Civil Procedure 60. The Superior Court denied the motion.

On November 19, 1979 Plaintiff went before the Portland City Council, although not at its invitation, and raised his arguments concerning the steps he had taken to comply with the City's earlier requests and the repairs he had made to render the building sound. He indicated a desire to present evidence of the soundness of the building and future plans to the Council for approval so the demolition order could be removed. Tr. 7. The Council denied Plaintiff's requests.

In its order on Plaintiff's motion for summary judgment, the Court found that there remains a substantial issue of material fact regarding the course of dealing between the parties while the demolition order was being appealed. Whether indeed the demolition order was vitiated by the subsequent conduct of the parties will determine whether new proceedings in accordance with due process were necessary. Assuming, *arguendo,* that an estoppel was raised by the alleged conduct as outlined in the complaint, Plaintiff would have been entitled, under due process standards, to notice and an opportunity to respond. *Cleveland Board of Education v. Loudermill,* 470 U.S. 532, 547, 105 S.Ct. 1487, 1496, 84 L.Ed. 2d 494 (1985). The extent of the process due varies, depending on the nature of the case. *Logan v. Zimmerman,* 455 U.S. 422, 428, 102 S.Ct. 1148, 1153, 71 L.Ed.2d 265 (1982). Plaintiff argues that his appearance before the City Council was not a

---

4. In its opinion, the *Williamson* Court provides two reasons that the taking claims are unripe: (1) that because respondent had not sought a variance from the complained of regulations, the Commission's decision was not a final reviewable order; and (2) that respondent had not sought compensation through the procedures provided by the state for damages. In his brief Plaintiff focuses on the first reason provided by the Court, while it is the second reason that this Court finds apposite here.

5. While the Court will not predict whether a Maine court would regard the demolition of Plaintiff's buildings as a compensable taking rather than a noncompensable exercise of the police power, that does not negate the existence of the remedy. Moreover, Plaintiff has not asserted that a *Foss*-type action would be inadequate to satisfy the requirements of due process. *See Culebras,* 813 F.2d at 514.

hearing for purposes of due process. The Court agrees.

As the Supreme Court has stated: "[T]he timing and nature of the required hearing 'will depend on appropriate accommodation of the competing interests involved.' ... These include the importance of the private interest and the length or finality of the deprivation; ... the likelihood of government error ... and the magnitude of the governmental interests involved." *Id.* at 434. It is plain that Plaintiff has a constitutional right not to be deprived of his property and that demolition would constitute deprivation of the utmost finality. While the City certainly has an interest in abating nuisances within its boundaries, its interest also extends to assuring that the buildings it demolishes are in fact nuisances. There is no municipal interest in demolition for demolition's sake. Plaintiff asked at the hearing for an opportunity to present evidence on the changed condition of the building slated for demolition. That request was refused despite at least one councilor's comments that "I have trouble believing some of the things you say just because of my short experience with you.... I don't think you've been truthful with me." Tr. 13–14. Given the gravity and finality of the action that would ensue and Plaintiff's representations concerning the repairs, as well as the City's own interest in seeing that the buildings it demolishes are actually nuisances, the Council, to satisfy due process standards, should have allowed Plaintiff to present evidence pertinent to the issue of whether the buildings were a nuisance, for its decision could not be an informed one without hearing the facts. Moreover, if the Court treats the City Council's action at the November 19, 1979 meeting as a new order of demolition, it is plain that Plaintiff was not afforded an opportunity to appeal the decision because the building was demolished before the full thirty-day statutory appeal period had run. *See* Rule 80B(b) and 17 M.R.S.A. § 2852.

If an estoppel was raised by the conduct of the parties and the prior demolition order had thus become void, requiring issuance of a new demolition order, the Court finds Defendant's proposition that Plaintiff has received all the process due him unfounded. Therefore, Defendant's motion to dismiss the due process claim must be denied.

### *Damages*

█ Defendant has filed another motion in this action seeking to limit any damages Plaintiff might recover for demolition of his property to the diminution of market value of that property. Although Plaintiff argues that in his just compensation claim he should not be limited to the damages provided for takings by eminent domain, that is precisely the measure of damages prescribed by the Maine Law Court for inverse condemnation actions. *Foss v. Maine Turnpike Authority*, 309 A.2d at 344. The Law Court has made explicit that the appropriate measure of damages in such cases is the diminution in market value of the property that was taken.[6] *Id.*

Defendant argues, too, that Plaintiff's recovery should be limited to diminution of value if he is entitled to recover under the common law. The general rule in Maine and other jurisdictions is that the measure of damages for injury to property is the difference in value of the property before and after the injury. *See, e.g., Borneman v. Milliken*, 123 Me. 488, 495, 124 A. 200 (1924). Some jurisdictions have recognized an exception to that rule, permitting either diminution of value or the cost of restoration. *See Regal Construction Company v. West Lanham Hills Citizens' Association*, 256 Md. 302, 260 A.2d 82 (1970). As the Maryland Supreme Judicial Court stated in *Regal:*

> [i]f ... the cost of replacing the land in its original condition is disproportionate to the diminution in the value of the land

6. The Maine Law Court has held that a cost to cure appraisal approach is acceptable in determining severance damage in a taking case. *Runser v. City of Waterville*, 355 A.2d 747, 750 (Me.1976). The Court indicated that cost to cure is not recoverable in itself but may be used to support a conclusion of reduction in fair market value if the cost is not greater than the decrease in fair market value if left uncured. *Id.*

caused by the trespass, unless there is a reason personal to the owner for restoring the original condition, damages are measured only by the difference between the value of the land before and after the harm.

*Id.* at 84 (quoting Restatement, Torts § 929 (1939)). As the *Regal* court noted, the exception usually applies in cases where the plaintiff's home has been injured. *Id.*

Plainly, the cost of restoration here is disproportionate to the diminution in value, one being estimated at over a million dollars and the other at approximately $30,000. Plaintiff urges that the restoration cost is the appropriate measure of damages here because Plaintiff had a personal reason for wanting the property in its original condition; specifically, he wished to keep the property as it had been and use it for apartments since it had been in his family for a long time. Apart from the fact that the building had been in Plaintiff's family for many years, there appears to be nothing that distinguished it from other commercial buildings in Portland. It had been vacant for several years, had obviously been untended by Plaintiff, and had fallen into serious disrepair before the City ordered it demolished. The Court does not find Plaintiff's personal reason for desiring the property restored particularly compelling. First, the building is not his residence. Second, Plaintiff lives in New Jersey, far from the property in question, and apparently paid little attention to it for several years. He also wants to rebuild a building for commercial purposes different from those it had when it was in his family. Finally, Plaintiff's attachment to the idea of the property restored was not so great that it kept him from conveying it in 1982 to a person who consequently acquired the right to do with it as he pleased.[7] *See* Deposition of Plaintiff.

Finally, the Court finds that this is not an appropriate case for an award of restoration costs because, in fact, the building is gone and cannot be repaired. Plaintiff cannot be made whole in the sense that *his* building can be restored to its original condition.

The Court agrees with Plaintiff that the Colorado Supreme Court has provided an insightful analysis of damages issues in this area in *Board of Commissioners v. Slovek*, 723 P.2d 1309 (Colo.1986). That Court urged a flexible approach to damages assessment that might include cost of restoration when such an award is necessary to return plaintiff to his pre-tort position. *Id.* As the Court stated:

> If the damage is reparable, and the costs, although greater than original value, are not wholly unreasonable in relation to that value, and if the evidence demonstrates that payment of market value likely will not compensate the property owner for some personal or other special reasons, we conclude that the selection of the cost of restoration as the proper measure of damages would be within the limits of a trial court's discretion.

*Id.* at 1316–17.

The Court considers the damage to Plaintiff's building to be irreparable. Even if construction of a new building could be considered a return to the original condition, the cost of the reconstruction is "wholly unreasonable" in relation to the original value, and in any event the Court finds that Plaintiff does not have a persuasive personal reason for desiring restoration. Therefore, the Court does not find any reason to exercise its discretion to allow restoration costs as the appropriate measure of damages in this case. The Court will, therefore, absent a dramatic change of its perception of the circumstances during trial, instruct the jury that the appropriate measure of damages for demolition of Plaintiff's building by the City of Portland is the diminution in market value of the property.

---

7. The facts that Plaintiff was not paid for the conveyance, purportedly orally retained a right of first refusal, and has recently acquired an easement in the property do not alter the Court's opinion. According to Plaintiff, the new owner has paid the taxes on the property since 1982 and is the appropriate person for interested purchasers or developers to see about the property.

Accordingly, it is ORDERED that Defendant's motion to dismiss the federal claims is GRANTED as to the just compensation claim and DENIED as to the due process claim, and the claim under the United States Constitution for just compensation is hereby DISMISSED. It is FURTHER ORDERED that Defendant's motion to dismiss the claim brought under 14 M.R. S.A. § 7552 is hereby GRANTED, and that claim is hereby DISMISSED. It is also ORDERED that Defendant's motion to dismiss the state constitutional claims on the grounds that it is time barred is hereby DENIED. Finally, it is ORDERED that Defendant's motion *in limine* on the appropriate measure of damages is GRANTED.