Merrimack,
No. 5318.

ELLSWORTH L. PHILBRICK *v.* JOHN C. WHITE & *a.*

JOHN C. WHITE & *a. v.* ELLSWORTH L. PHILBRICK & *a.*

Argued April 6, 1965.

Decided June 30, 1965.

*Daniel E. Donovan, Jr.,* city solicitor (by brief and orally), for the city of Concord.

*L. Wilder Quint* (by brief and orally), for Hazel White.

DUNCAN, J. Stimulated by federal enactments and a desire to avoid the more drastic procedures of "slum clearance" and "urban renewal," municipal housing codes have been widely

adopted in recent years to promote neighborhood rehabilitation. See "Enforcement of Housing Codes," 78 Harv. L. Rev. 801, 803-804. In 1959, New Hampshire adopted an enabling act which authorized municipalities to enact housing codes prescribing minimum housing standards and forbidding the use or occupancy of dwellings unfit for human habitation. Laws 1959, c. 293, now RSA ch. 48-A (supp). In 1961 the city of Concord adopted a housing code effective June 19, 1961.

In June 1959 the defendants White acquired the properties involved in these actions, consisting of two multi-unit dwellings situated at 5-7 and 9-11 Curtice Avenue, which they continued to rent as low-cost housing. Sometime prior to July 1, 1963, the buildings were vacated, in part through eviction proceedings instituted after notice by the city building inspector that they were considered unfit for habitation. The defendant, Hazel White continues to own the properties as surviving joint tenant, her husband, John C. White, having deceased.

On May 10, 1962 the plaintiff building inspector notified the Whites, by ordinary mail, that as a result of an inspection made by him on April 16, 1962, he "deemed both buildings unfit for human habitation [and] dangerous to the health, morals, safety and general welfare of their occupants." The letter concluded with a specification of twenty-three sections of the code which were found to be violated. It contained the following order: "You, therefore, are hereby ordered to repair these buildings in such a manner that they will no longer exist in violation of the terms of the Housing Code." It further specified: "Failure to correct these violations within 60 days from the date of this order will result in ordering the occupants to vacate and the buildings demolished as provided by the terms of the code."

The petition of the building inspector seeks in part an order that the defendants "conform to . . . the order . . . requiring demolition of the dwellings." The defendants seek a ruling that the housing code "is unconstitutional and not in conformity with . . . Chapter 48-A, RSA," and that the action of the building inspector and the city have deprived them of their property without due process of law.

The defendant's brief states that the "validity and constitutionality of the Statute as enacted by the New Hampshire Legislature in 1959 . . . is not in question here," and that it is assumed for purposes of this case that the statute is "a valid exercise of the police power, and therefore constitutional."

Although in oral argument defendant's counsel expressed misgivings concerning these statements, neither he nor the city saw fit to utilize the opportunity afforded by the court for the filing of memoranda upon the issue. Our decision is accordingly confined to questions presented by the pleadings and transferred, pertaining to the validity of the ordinance only.

In our judgment the procedural provisions of the ordinance cannot be construed to fall within the legislative grant of authority. *S.* 14 (1) of the ordinance provides: "Whenever the Inspector of Buildings determines that there are reasonable grounds to believe that there has been a violation of any provision of this ordinance, he shall give notice . . . to the person or persons responsible therefor . . . ." *S.* 14 (3) provides that such a notice by the building inspector "shall automatically become an order if a written petition for a hearing is not filed with the Board of Housing Appeals within 10 days after such notice is served." *S.* 14 (5) provides for an appeal to the mayor and board of aldermen by any owner aggrieved "by an order of the Board of Housing Appeals made pursuant to Subsection (3) of Section 14." Such an order is entered only in the event that the owner has sought a hearing before that board. *S.* 14 (2). In the instant case no hearing before the housing board of appeals was sought or held.

In contrast to the provisions of the Concord ordinance, the enabling act provides that a housing ordinance shall be administered by a "public agency," which "shall be a board" of specified membership. RSA 48-A:1 IV; 3 I. It specifies that a municipal code "shall" include provisions by which a hearing before the "public agency" shall be held, after specified notice, (see *Michaud* v. *Bangor,* 159 Me. 491) before any order for repair or demolition is entered by the agency or board. *S.* 3 II, III. A subsequent appeal to the mayor and board of aldermen is provided for (*s.* 3 IV); and in the event of noncompliance, provision is made for a hearing *de novo* before the Superior Court at which pertinent evidence "concerning the fitness of the dwelling for human habitation" shall be heard. *S.* 4. Although, as the city points out, the statute provides that an ordinance "may authorize the public agency . . . to delegate any of its functions under such ordinance . . . " the Concord ordinance contains no such authorization.

We therefore conclude that the ordinance is defective in failing to provide for the mandatory hearing before the housing board

which the statute requires, and in purporting to permit entry of an order for repair or demolition, by the inspector of buildings rather than by the board. These deficiencies are sufficiently material to invalidate the proceedings against these defendants. "The framework and system of state government . . . would obviously be attacked and undermined if municipalities were free to enact unpermitted legislation for their localized areas . . . 'In the nature of things, such [local] legislation must be not inconsistent with the laws of the state . . . . ' *State* v. *Noyes*, 30 N. H. 279, 293." *State* v. *Paille*, 90 N. H. 347, 349.

So far as the record discloses no order for demolition of the defendant's buildings has been entered. The letter of the building inspector of May 10, 1962 purported merely to order their "repair." It stated that upon failure to correct the specified violations within sixty days, an order "to vacate and the buildings demolished," "will result," a statement which contemplated the entry of a further order at a future time. The defendant's claim to compensation for a "taking" of her property by the city is thus without support in the record before us.

We rule that the Concord housing code, including the provisions of section 14 (1) and (3) referred to in the first question transferred, is invalid for want of compliance with RSA ch. 48-A (supp).

For reasons previously indicated the ordinance does violate the statute in the particulars specified by the second question transferred.

The third transferred question requires no answer in view of these conclusions.

*Remanded.*

All concurred.