STATE of Maine

v.

Charles T. KEEGAN.

Supreme Judicial Court of Maine.

Oct. 30, 1972.

David M. Cox, Penobscot County Atty., George Z. Singal, Asst. County Atty., Bangor, for plaintiff.

Vafiades, Brountas & Kominsky, by Eugene C. Coughlin, Bangor, for defendant.

Before DUFRESNE, C. J., and WEBBER, WEATHERBEE, WERNICK and ARCHIBALD, JJ.

WEATHERBEE, Justice.

The Defendant pleaded not guilty in the District Court to a complaint which charged him with assault and battery upon his then wife. After trial there he was found guilty and sentenced to serve 30 days in the County Jail. The Defendant filed an appeal to the Superior Court where he was again tried, de novo, this time before a jury. Before trial commenced the State was granted permission to amend the complaint by striking out all language which charged a battery. The jury found the Defendant guilty of assault and the Presiding Justice imposed a sentence of 60 days in the County Jail.[1] After serving a few days of this sentence the Defendant brought this present appeal.

Counsel was appointed to represent Defendant in this appeal and he raises two issues—the first claims that the Defendant's constitutional rights to due process of law and an unfettered choice to a jury trial were denied him by our procedure which permits a Superior Court Justice on appeal to impose a greater sentence upon a Defendant than that which he had received in the District Court. His second claim is that the Presiding Justice erroneously denied his motion for a mistrial.

*Imposition of a Heavier Sentence Upon Appeal*

In his written brief the Defendant bases his contention as to this issue on the principle announced in North Carolina v. Pearce, 395 U.S. 711, 89 S.Ct. 2072, 23 L. Ed.2d 656 (1969) that a defendant who has successfully demonstrated trial error on appellate review and who received a retrial resulting in conviction cannot be sentenced to a greater term than he had previously received, in the absence of evidence of later bad activity. The Court in *Pearce* considered that the imposition of a more severe sentence after reconviction would violate due process if it was imposed as purposeful punishment of the defendant for having engaged in the appeal and that the ultimate result of such a practice would be a chilling of the use of the appeal process. The Court said it was impelled to announce this prophylactic rule because of its conclusion that the rule was warranted by the frequency in which such vindictive sentences had occurred.

In Weeks v. State, Me., 267 A.2d 641 (1970) this Court recognized the principle established by *Pearce* as controlling the resentencing of a prisoner whose conviction and sentence had previously been set aside by an appellate court. At this time we concluded that it would not be in the public interest for us to go beyond the holding in *Pearce* and set up an absolute bar against *any* passing of heavier sentences on reconviction and resentence of persons who had succeeded in having their previous sentences set aside. We were impressed then by the desirability of the second sentence being based upon the most complete and current information available at that later time.

Neither *Pearce* nor *Weeks* addressed itself to the imposition of heavier sentences upon appeal from a lower court followed by conviction after a trial de novo in a court of general jurisdiction.

Before oral argument in the present case, the Court announced its decision in Colten v. Kentucky, 407 U.S. 104, 92 S.Ct.

---

[1]. 17 M.R.S.A. § 201 provides punishment by a fine of not more than $100 or by imprisonment for not more than 6 months, or by both, for an assault which is not found to be of a high and aggravated nature.

1953, 32 L.Ed.2d 584 (1972) where it had examined the effect upon due process rights of a heavier sentence imposed after a trial de novo on appeal from conviction by a lower court in a two-tier system much like our own. The Kentucky Court of Appeals had said, in its decision on Colten's appeal, that ". . . the inferior courts are not designed or equipped to conduct error-free trials, or to insure full recognition of constitutional freedoms. They are courts of convenience, to provide speedy and inexpensive means of disposition of charges of minor offenses." Colten v. Commonwealth, Ky., 467 S.W.2d 374, 379 (1971). A defendant charged there with a misdemeanor may plead guilty and be sentenced in the inferior court or he may plead not guilty and, if found guilty, receive a sentence there. In either case the defendant has an absolute right to appeal and to be tried de novo in a court of general jurisdiction by either a jury or a judge. Colten had been fined $10 in the inferior court and a $50 fine was imposed upon appeal. The United States Supreme Court noted that

> ". . . The right to new trial [on appeal] is absolute. A defendant need not allege error in the inferior court proceeding. If he seeks a new trial, the Kentucky statutory scheme contemplates that the slate be wiped clean. . . . Prosecution and defense begin anew. By the same token neither the judge nor jury that determines guilt or fixes a penalty in the trial *de novo* is in any way bound by the inferior court's findings or judgment. The case is to be regarded exactly as if it had been brought there in the first instance. A convicted defendant may seek review in the state appellate courts in the same manner as a person tried initially in the general criminal court. . . . However, a defendant convicted after a trial or plea in an inferior court may not seek ordinary appellate review of the inferior court's ruling.

His recourse is the trial *de novo*." Colten v. Kentucky, supra, 407 U.S. at 113, 92 S.Ct. at 1958, at 32 L.Ed.2d 591.

The Court distinguished the situation presented under the Kentucky two-tier system from that which had resulted in the per se prohibition in *Pearce* and said that it did not find that the possibility of vindictiveness was inherent in the Kentucky trial de novo system or that the record demonstrated hazards which would warrant the restraints imposed in *Pearce*. Noting that the court which ultimately sentenced Colten was not the one as to which his appeal had indicated dissatisfaction and that the de novo court was not asked to find error in another court's work but only to give him the same trial available to defendants whose cases originated there, the Court saw no reason to assume that the de novo court would deal more strictly with a defendant on appeal than with one whose case originated in the court of general jurisdiction and who chose to put the State to its proof.

The Court in *Colten* found, on balance, no disadvantage to a defendant in the Kentucky arrangement for dealing with misdemeanors and observed that the two-tier system gives the defendant a simple and speedy trial, two opportunities to obtain a judgment satisfactory to him with, if he wishes it, a chance in the lower court to learn about the State's case without revealing his own, or, if he chooses, to avoid trial in the District Court and promptly secure one in the court of general jurisdiction.

The situation facing a Maine defendant, such as Mr. Keegan, charged with a misdemeanor in the District Court, is not substantially different from that of a Kentucky defendant in the inferior court of their two-tier system.[2] He has several options: he can plead guilty and then abide by the sentence or appeal from the sentence to the Superior Court; he can plead not guilty,

2. We do not, however, consider our District Court system to have any built-in disability to conduct error-free trials or recognize constitutional freedoms.

waive hearing and then abide by the judgment or appeal from the judgment to the Superior Court; or, he can plead not guilty, go to trial and, if found guilty, either abide by the judgment or appeal from the judgment and have a trial de novo in the Superior Court.[3] The obvious advantages of convenient, speedy and inexpensive disposition of charges of minor offenses are present in our own two-tier system, together with the same opportunities for study of the State's case before jury trial and the option of a second de novo trial in the Superior Court if the defendant is dissatisfied with the results of his District Court trial.

"The trial de novo", the Court in *Colten* said 407 U.S. at 117, 92 S.Ct. at 1961, 32 L.Ed.2d at 594, "will be a completely fresh determination of guilt or innocence." It also represents a fresh evaluation for purposes of sentence made, in part, on the basis of testimony heard by the Court on appeal which may be more complete and substantially more favorable to either the state or the defendant than that which was presented to the judge in the District Court.

██ We consider the reasoning of the Court in *Colten* also demonstrates an absence of any denial of Federal Due Process guarantees to this Defendant in the respect alleged under our Maine system.[4] Similarly, we do not find any denial of

rights under the law of the land (which we have equated with due process, Michaud v. City of Bangor, 159 Me. 491, 196 A.2d 106 (1963)) promised by our own Constitution, Article I, Sec. 6.

In *Colten* the issue raised concerned the chilling of the appellant's right to appeal and obtain a trial de novo as guaranteed him by the statute.

██ This Maine Appellant urges us, additionally, that if his larger sentence in the Superior Court is allowed to stand the result will be an unconstitutional limitation upon the right to trial by jury guaranteed by Article I, Sec. 6 of the Maine Constitution.

In this State a person who is charged with a misdemeanor in the District Court can obtain a jury trial only by appealing to the Superior Court from a District Court conviction. It is constitutionally required that he be freely allowed an appeal to the court at which a jury trial may be had. Johnson's Case, 1 Me. 230 (1921); Sprague v. Inhabitants of Androscoggin County, 104 Me. 352, 71 A. 1090 (1908).

We have held that the opportunity for such an appeal satisfies the guarantees of jury trial for all criminal prosecutions. State v. Craig, 80 Me. 85, 13 A. 129 (1888).

The Appellant argues that the *possibility* of receiving a harsher sentence on appeal

---

3. D.C.Crim.R., Rules 37(a), 38, 39(b), 40.

4. In Lemieux v. Robbins, 414 F.2d 353 (1st Cir. 1969) the Petitioner, whose appeal from a Maine District Court conviction had resulted in a heavier sentence on conviction in the Superior Court, claimed that his appeal rights had been unconstitutionally limited. The Court distinguished the situation in *Pearce* from the facts presented by an appeal from the lower court of our two-tier system saying at 355, 356:

"... Petitioner's so-called appeal was not an appeal predicated upon, or dependent upon, error, but was a claim, as of right, of a trial de novo. ... The purpose of the district court 'appeal' was to afford petitioner his

right to a jury trial under the state constitution. To say that to cause him to lose the 'benefit' of the district court sentence encumbers or 'chills' this appeal is to assume the point. Rather, the question is, was the state constitutionally obliged to grant him this benefit, or was the procedure as a whole a reasonable one.

. . . . .

Looking at the total circumstances, where the state offers the defendant a full trial, with full right of appeal therefrom, in the Superior Court, we do not think it unreasonable for it to restrict the appeal from the district court in the sense here complained of. . . . The state's two-step procedure has a legitimate purpose. . . . "

discourages defendants from appealing in order to obtain a jury trial. This precise issue has not previously been before this Court.

We have already held that a statute which provided that a defendant who was, on appeal, convicted of unlawful sale of liquor *shall* suffer double the amount of fines, penalties and imprisonment awarded against him by the magistrate below is an unnecessary restraint upon both the statutory right to appeal and to the constitutional right to jury trial. State v. Gurney, 37 Me. 156 (1853). The Court said there at 163, 164:

"If the Legislature can impose penalties upon the exercise of the right, they may be so severe and heavy as practically to destroy it. The provision under consideration would have the effect, as it was doubtless intended, to check appeals. It is an additional punishment inflicted upon one, who may be found guilty, for appealing. . . . But the constitution guarantees to the respondent, whether innocent or guilty, a right of trial by jury, without any qualifications or restrictions. . . .

This provision of the statute must be regarded as an unnecessary restraint upon the right of appeal, and therefore in conflict with the constitution, and inoperative and void." [5]

In United States v. Jackson, 390 U.S. 570, 88 S.Ct. 1209, 20 L.Ed.2d 138 (1968) the Court found to be unconstitutional a provision in the Federal Kidnapping Act which would have permitted the imposition of the death penalty "if the verdict of the jury shall so recommend" but made no provision for the death penalty upon pleas of guilty or jury waived convictions. Therefore, only persons who had had jury trial would stand in danger of execution for having committed the offense. The Court said:

"The question is not whether the chilling effect is 'incidental' rather than intentional; the question is whether that effect is unnecessary and therefore excessive . . .. Congress cannot impose such a penalty in a manner that needlessly penalizes the assertion of a constitutional right." United States v. Jackson, supra at 582, 583, 88 S.Ct. at 1216, 20 L.Ed.2d at 147.

The principle announced in *Jackson* is that the Congress may not unnecessarily provide an *additional* penalty for these persons who elect to exercise their right to jury trial. We declared the same principle in *Gurney*.

The practice which the present Defendant attacks rests on a different rationale. The range of penalties which the law provides for violation of misdemeanors is the same whether a defendant is found guilty in the District Court or in the Superior Court following appeal and whether he has had jury trial or has waived it. He can receive no punishment after jury conviction other than that which he could have received on conviction in the District Court or after jury-waived trial in the Superior Court.

In complying with its obligation to provide trial by jury to persons charged with misdemeanors who chose to exercise the right, the State has made available on appeal a trial de novo. It has given a de-

5. The Court quoted at 164 with approval the language in Greene v. Briggs, 15 Law Reporter 614 (1852) which had dealt with a statute which inflicted a penalty of $10 upon conviction by a Justice of the Peace but added an additional penalty of $80 or 30 days in jail if conviction occurred on appeal:
"I find it equally difficult to reconcile the increase of penalties upon a conviction after an appeal with the unimpaired enjoyment of the right of trial by jury. . . . If the offence remains the same, and the offender has done nothing but claim an appeal in order to have his case tried by a jury, must not these additional penalties be founded on the exercise of that right?"

fendant who is dissatisfied with the results of his trial in the District Court a second opportunity before the jury. The law neither permits (as in *Jackson*) nor requires (as in *Gurney*) a greater punishment to be inflicted upon him than that which he could have suffered in the District Court or that which he could have suffered if he had chosen to waive jury in the Superior Court. The risk which he takes when he appeals to get a jury trial is the same risk the appellant took when he appealed and waived jury trial in *Colten*—that is, that the Justice on appeal may be convinced by the evidence he hears at the trial de novo and by the information he receives for sentence consideration that appropriate circumstances require a heavier sentence than that which the Judge below imposed on the basis of the testimony *he* had heard and the information *he* had received.

Traditionally, as the Court in *Jackson* agreed, the Judge who hears the case tried should be the arbiter of the sentence. Only a very strong policy consideration should bar him from the exercise of his own judgment so long as he is within the limitations established by the Legislature. The United States Supreme Court found such a policy consideration present in *Pearce* in the frequency in which increased sentences were given as purposeful punishment for having successfully sought appellate review of judgments of courts of general jurisdiction.

That Court later concluded in *Colten* that the possibility of vindictiveness, which in *Pearce* it had found to require the imposition of the prophylactic rule, was not present in the Kentucky two-tier system nor disclosed in the record of the case.

We find nothing in the procedure of our own system which permits the Justice, after trial de novo, to exercise the traditional presiding magistrate's authority to impose the sentence demanded in his own judgment which can be considered per se to act as a limitation on the right to jury trial. Nor does the record disclose that this Jus-

tice did anything other than to sentence under the usual standards followed in that Court in cases which were tried there in the first instance.

## The Motion for Mistrial

During cross-examination of the Defendant by the County Attorney the following occurred:

"Q Okay, do you have any idea why she had you arrested at this time if she was as jealous of you as you say she was?

A This has happened before, sir.

Q She has had you arrested before?

A Yes, sir.

Q Were you convicted before?

A No, sir.

Q Did she drop the charges before?

A I don't know; I don't believe you can drop them, sir.

Q You were never tried in a court before for an incident other than this?

A Other than this?

Q Other than this assault and battery on your wife?

A Yes, sir, I have.

Q You have been tried.

A Yes, sir.

Q Were you found guilty or not guilty?

A It was either filed or thrown out of court, sir.

Q You don't know where?

A No, sir, I don't."

No objection was made by Defendant's counsel to this line of questioning but, following the last answer quoted above, counsel moved for a mistrial contending that

the disclosure by Defendant that he had been arrested on another such charge brought by his wife was prejudicial to the Defendant.[6]

The Presiding Justice denied the motion but immediately instructed the jury that they should disregard the reference to prior court proceedings on another charge and base their decision solely upon the evidence as to Defendant's activities at the time of the incident for which he was then being tried.

■ We find no error in the Justice's denial of the motion for mistrial. There was nothing improper in the County Attorney's asking the Defendant if he had any idea why his wife would have him arrested without justification. The Defendant's answer led to a series of questions which disclosed to the jury that his wife had, on a prior occasion, made a complaint which had resulted in his arrest and that the case had been disposed of in such a manner as to suggest that authorities had concluded that there was no merit to her charge.

While the area into which the County Attorney ventured was an uncertain one involving risk of disclosure of facts which might prove prejudicial, we find that no prejudice did occur in the disclosure of an incident which would, if accepted by the jury, tend to suggest only that on another occasion his wife had brought a charge of assault against him which had been found to be without merit.

It is apparent that a clerical error occurred in the recording of the judgment against the appellant. Although the issue which the Presiding Justice submitted to the jury was whether or not the State had proven beyond a reasonable doubt the guilt of the Defendant of the offense of assault and although the record shows that the jury found the Defendant guilty of assault, the Judgment and Commitment signed by the Justice states that the Defendant was

convicted of the crime of assault *and battery* and sentenced for that offense.

As the battery element of the original charge had been dismissed before trial, the judgment as recorded is erroneous. Weeks v. State, Me., 250 A.2d 827 (1969).

The entry will be

Appeal sustained only to the extent that the matter is remanded to the Superior Court for correction of the judgment and for resentencing.

POMEROY, J., did not sit.

All Justices concurring.

6. We consider that these questions and answers were intended—and must have been understood—as referring to a prior charge of assault on his wife.